Rule 23 order filed
April 12, 2010;
Motion to publish granted
May 12, 2010.

NO. 5-09-0110

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | |
|---|---|
| S.I. SECURITIES, | ) Appeal from the |
| | ) Circuit Court of |
| Petitioner-Appellant, | ) Williamson County. |
| | ) |
| v. | ) No. 00-TX-10 |
| | ) |
| JAMES K. POWLESS *et al.*, | ) |
| | ) |
| Respondents, | ) |
| | ) |
| and | ) |
| | ) |
| PHILLIP CASTELLANO, | ) Honorable |
| | ) Ronald R. Eckiss, |
| Respondent-Appellee. | ) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

On August 16, 2000, the circuit court of Williamson County, Illinois, entered a judgment for a tax deed in favor of the petitioner, S.I. Securities. On May 9, 2003, respondent Phillip Castellano filed a petition pursuant to section 2-1401 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1401 (West 2002)) to vacate the judgment for the tax deed. The circuit court granted Castellano's petition and vacated the judgment, and S.I. Securities filed a timely notice of appeal. On appeal, S.I. Securities contends, among other things, that the circuit court erred in considering the merits of Castellano's section 2-1401 petition because it was not timely filed. Castellano contends that his petition was timely filed and, alternatively, that the judgment for the tax deed was void and could be collaterally attacked at any time. For the following reasons, we reverse the circuit court's judgment that granted Castellano relief under section 2-1401 of the Code.

1

The Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2002)) governs the issuance of tax deeds. Pursuant to section 21-90, the county collector may offer property for public sale when a judgment has been rendered against that property for the nonpayment of real estate taxes. 35 ILCS 200/21-90 (West 2008). The buyer of property at such a sale does not receive title to the property but, instead, receives a "certificate of purchase." 35 ILCS 200/21-250 (West 2008). The issuance of a certificate of purchase does not affect the delinquent property owner's legal or equitable title to the property. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 101 (2000). Before a redemption period expires, the property owner has the opportunity to redeem the property by paying the tax arrearage and costs. 35 ILCS 200/21-345 through 21-355 (West 2008).

After receiving the certificate of purchase, the tax purchaser may file a petition in the circuit court asking the court to enter an order directing the county clerk to issue a tax deed to the property. 35 ILCS 200/22-30 (West 2008). Before the tax purchaser is entitled to a tax deed, however, the redemption period must expire without any redemption by the property owner, and the tax purchaser must prove that he strictly complied with the requirements for certain statutory notices to the property owners, occupants, and parties interested in the property. 35 ILCS 200/22-10 through 22-25 (West 2008).

The legislature intended a tax deed, once it is issued, to be virtually incontestable except by direct appeal. The legislature's intent was to provide a tax buyer with a new and independent title, free and clear from all previous titles and claims of every kind, and assurance to the tax buyer that his title and rights to the property would be unimpaired. *Killion v. Meeks*, 333 Ill. App. 3d 1188, 1193 (2002). The legislature drafted the Property Tax Code in this manner because, prior to 1951, there was an alarming increase in the rate of tax delinquencies, and "almost any defect or deficiency, no matter how minute, in a tax

deed proceeding that led to the issuance of a tax deed made a deed suspect and generally void." *Killion*, 333 Ill. App. 3d at 1191. To accomplish its legislative purpose, the legislature drafted section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2002)), which at the relevant time read as follows:

"Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under that Section with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20[] and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30."

In the present case, the judgment directing the county clerk to issue the disputed tax deed to S.I. Securities was entered on August 16, 2000. The county clerk subsequently issued the tax deed to S.I. Securities on September 18, 2000, and S.I. Securities recorded the tax deed the same day. No one appealed from the August 16, 2000, judgment that directed the county clerk to issue the tax deed. Therefore, the only vehicle for vacating S.I. Securities' tax deed was section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)).

3

Section 2-1401 establishes a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Section 2-1401(c) of the Code, however, provides that a section 2-1401 petition must be filed no later than two years after the entry of the order or judgment sought to be vacated. 735 ILCS 5/2-1401(c) (West 2008). Section 2-1401(c) establishes an exception to the two-year time limitation as follows: "Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2-1401(c) (West 2008).

In the present case, Castellano initiated his section 2-1401 proceeding on May 9, 2003, which was more than two years after the entry of the August 16, 2000, judgment that he sought to vacate. However, following an evidentiary hearing, the circuit court found that S.I. Securities had fraudulently concealed the grounds for relief from the judgment and that Castellano timely filed his section 2-1401 petition due to the fraudulent concealment. In addition, as to the merits of the petition, the circuit court found that Castellano proved, by clear and convincing evidence, that S.I. Securities procured its tax deed by fraud or deception. See 35 ILCS 200/22-45(3) (West 2008). Accordingly, the circuit court entered a judgment that vacated the August 16, 2000, judgment for a tax deed, and S.I. Securities appealed.

The circuit court's judgment that granted Castellano relief under section 2-1401 involves two separate and distinct issues of fraud. First, the circuit court found that Castellano proved that S.I. Securities fraudulently concealed the grounds for the section 2-1401 relief. Second, the circuit court found that Castellano proved that S.I. Securities committed fraud in obtaining the tax deed.

We initially focus our analysis on appeal on the first issue of fraud, *i.e.*, concealing the grounds for the section 2-1401 petition, because if Castellano failed to establish a

4

fraudulent concealment sufficient to toll the two-year statute of limitations, his petition was untimely and the circuit court was without jurisdiction to address the merits of the petition.[1] We have identified the following testimony, evidence, and procedural history in the record that are relevant to our analysis of fraudulent concealment.

The property at issue was originally described in the county recorder's records as "Lot Four in Kent's Second Addition to the City of Marion, Illinois." We refer to this original property description as "Lot Four in Kent's Second Addition" or "Lot Four." As of January 23, 1995, the record titleholder to Lot Four was James K. Powless, as the trustee of a certain land trust. The beneficial owners of this land trust were Marion and Roberta Castellano. Marion Castellano is the brother of the respondent, Phillip Castellano.

On January 23, 1995, a street that was adjacent to Lot Four in Kent's Second Addition, known as Monte Drive, was vacated. By a new plat that was recorded on February 21, 1995, Lot Four in Kent's Second Addition and Monte Drive of Kent's Second Addition were replatted into "Lot One and Lot Two in Kent's Third Addition to the City of Marion." We refer to these new lots as "Lot One and Lot Two in Kent's Third Addition" or "Lot One" and "Lot Two." The new Lot One in Kent's Third Addition was created with a portion of the old Lot Four in Kent's Second Addition. The new Lot Two in Kent's Third Addition was created with the remaining portion of the old Lot Four in Kent's Second Addition along with the

---

[1] An exception to this rule is when the petitioner establishes that the judgment was void. Void judgments can be attacked at any time, and section 2-1401 petitions attacking void judgments are not subject to section 2-1401's two-year statute of limitations. 735 ILCS 5/2-1401(f) (West 2008); *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379 (2005). We will address Castellano's argument that the circuit court's judgment was void later in this decision.

vacated Monte Drive. At some point, a home was constructed on the new Lot Two in Kent's Third Addition. The home was built on a portion of what was formerly Monte Drive and on a portion of what was formerly the old Lot Four in Kent's Second Addition. Nothing in the record established when this house was built.

In 1996, the old Lot Four in Kent's Second Addition no longer existed, but apparently Lot Four was, nonetheless, assessed for 1996 property taxes payable in 1997. No testimony was offered at the trial to explain the 1996 real estate tax assessment for Lot Four in Kent's Second Addition, and we cannot determine from the record if only Lot Four in Kent's Second Addition was assessed for 1996 taxes or if Lot One and Lot Two in Kent's Third Addition were also assessed for 1996 real estate taxes, resulting in a double taxation of the property. At that time, the recorded titles to Lot One and Lot Two in Kent's Third Addition were held by James K. Powless, as trustee, and in 1996, Powless, as trustee, was listed as the party in whose name the taxes on Lot Four were last assessed. For reasons that remain unexplained in the record, Powless never paid or challenged the 1996 real estate taxes assessed for the nonexistent Lot Four. On October 27, 1997, S.I. Securities purchased a tax sale certificate, number 00621-97, for unpaid 1996 taxes for a Lot Four in Kent's Second Addition.

The record on appeal indicates that on February 18, 1999, Powless, as trustee, executed a trustee's deed that transferred title to Lot Two in Kent's Third Addition to Marion and Roberta Castellano. This deed was recorded on February 19, 1999. On February 23, 1999, Marion and Roberta executed a mortgage to New Century Mortgage Corp. (New Century) on Lot Two in Kent's Third Addition, and the mortgage was recorded on March 1, 1999.[2]

---

[2]On September 12, 2003, Wells Fargo Bank Minnesota, N.A. (Wells Fargo), as an assignee of New Century, also filed a motion to vacate the tax deed, alleging that it did not

6

On March 1, 1999, a company named American Traditional Homes, Inc., entered into a contract for deed with Marion and Roberta to purchase Lot Two in Kent's Third Addition. In an affidavit that Phillip Castellano filed in support of his section 2-1401 petition, he alleged that he was the sole shareholder of American Traditional Homes, Inc., and that the corporation had been dissolved. Apparently neither the March 1, 1999, contract for deed nor a notice of the contract was ever recorded; no evidence in the record on appeal indicates that the contract, or notice of the contract, was ever recorded. On March 17, 1999, American Traditional Homes, Inc., also acquired title to Lot One in Kent's Third Addition from James K. Powless, as trustee. This deed was also not immediately recorded.

Meanwhile, S.I. Securities still had the tax sale certificate of purchase that it acquired on October 27, 1997, for Lot Four in Kent's Second Addition (now Lot One and a portion of Lot Two in Kent's Third Addition). As noted above, at some point a home had been constructed on Lot Two in Kent's Third Addition, and the home was located on a portion of what was formerly Lot Four in Kent's Second Addition. Phillip Castellano testified that he moved into that house in 1999 and continuously lived in the house at all the relevant times afterwards.

On March 28, 2000, S.I. Securities filed a petition for a tax deed alleging that the past-due 1996 taxes for Lot Four were never paid. In an affidavit filed by S.I. Securities in support of its petition for a tax deed, its agent stated that all the subsequent taxes that had become due and payable for Lot Four had been paid. S.I. Securities' agent stated in the affidavit that S.I. Securities gave notice of the tax proceeding to, among others, James K.

_____

receive notice of the tax proceeding. The record indicates that S.I. Securities settled with Wells Fargo, and on December 21, 2005, the circuit court granted Wells Fargo's motion to dismiss its petition with prejudice.

7

Powless as trustee and to Marion and Roberta Castellano. In addition, the agent stated in the affidavit that the time for the redemption of the taxes was extended to July 31, 2000, and that S.I. Securities gave Powless, Marion, and Roberta statutory notice of their right to redeem the taxes for Lot Four in Kent's Second Addition.

There is nothing in the record that established that Phillip Castellano had a recorded interest in the property at issue at any time prior to S.I. Securities filing its petition, and S.I. Securities did not give Phillip Castellano any notice of the tax proceeding. However, as noted above, Phillip Castellano was living in a house that was built on a portion of the former Lot Four in Kent's Second Addition and had been living there since sometime in 1999. In the affidavit in support of its petition for a tax deed, S.I. Securities' agent made the following statement:

"S.I. SECURITIES has visited, or caused to be visited, the above-described land or lot and found that there were no occupants in actual possession of such real estate."

S.I. Securities also published a notice of the pending tax proceeding in the local newspaper, the Marion Daily Republican. On August 16, 2000, S.I. Securities appeared in court on its petition for a tax deed, and no one appeared to contest the petition. Accordingly, the circuit court entered an order directing the county clerk to issue a tax deed to S.I. Securities conveying title to "Lot Four (4) in Kent['s] Second Addition to the City of Marion, Williamson County, Illinois." The county clerk subsequently issued a tax deed to S.I. Securities for Lot Four in Kent's Second Addition, and S.I. Securities recorded the tax deed on September 18, 2000, in the Williamson County recorder's office, the same day it was issued.

At the hearing on the section 2-1401 petition, Phillip Castellano maintained that he had no knowledge of the tax deed proceeding or of the issuance of the tax deed until October

8

15, 2002, when a general partner of S.I. Securities, Barrett Rochman, came to Castellano's residence and advised him that, by virtue of the tax deed, he owned a portion of the land on which Castellano's house sat. In addition, by this time, Castellano had begun constructing another home on Lot One in Kent's Third Addition that was located entirely on a portion of the old Lot Four in Kent's Second Addition.

On May 9, 2003, Castellano initiated the section 2-1401 proceeding that is the subject matter of this appeal. The section 2-1401 petition requested the circuit court to vacate the tax deed. Castellano alleged that he never received notice of the tax proceeding and that S.I. Securities acquired the tax deed with a false statement in its affidavit that it had visited the lot and found that there were no occupants in possession of the real estate. According to Castellano's petition, S.I. Securities knew that he resided in the house that occupied a portion of what was formerly known as Lot Four in Kent's Second Addition prior to the time it filed the August 15, 2000, affidavit that alleged that the lot was vacant.

Castellano's initial section 2-1401 petition was ultimately superceded by his sixth amended petition to vacate the tax deed, which he filed on April 17, 2006. Castellano acknowledged that he initiated his section 2-1401 proceeding beyond two years from the date of the August 16, 2000, judgment, but he alleged that S.I. Securities committed affirmative acts of fraudulent concealment which justified the late filing of the section 2-1401 petition. As justification for tolling the two-year statute of limitations, Castellano alleged the following facts to establish that S.I. Securities fraudulently concealed the grounds for relief:

"a. S.I. Securities is a sophisticated tax sale purchaser and has, upon information and belief, sought issuance of tax deeds in many proceedings.

b. Upon information and belief, S.I. Securities, during the times relevant hereto, had employed its own in-house attorney to prosecute said matters for them, and that Attorney Michael Langenstein was so employed.

9

c. On July 18, 2003, and again on May 3, 2004, S.I. Securities transferred its interest in the reference property to Jefferson Properties, LLC, a company, upon information and belief, that is controlled by the same person as S.I. Securities. ***

d. The officers listed with the Illinois Secretary of State for both entities are Barrett Rochman[] and Kenneth Rochman, with the same address listed for both. ***

e. S.I. Securities, by and through its agents, had knowledge that after they received a certificate of purchase as to said premises[] that [*sic*] Phillip Castellano[] built one home upon a portion of said premises[] and built a part of another home[] on another portion of said premises.

f. That, after entry of the tax deed, S.I. Securities, by and through its agents, had knowledge that ongoing construction was taking place upon said premises.

g. That, as a sophisticated tax purchaser, S.I. Securities was aware of their conduct in failing to name parties in possession, and the statutes and case law that would effectively prevent said parties from contesting the tax deed, unless such Motion to Vacate was filed within two years.

h. That, with said knowledge, S.I. Securities, and its related entity, Jefferson Properties, LLC, waited approximately two years and two weeks from the date said tax deed was recorded[] to contact the Petitioner.

i. That on or about October 15, 2002, Barrett Rochman, general partner of S.I. Securities[,] came to the residence of Phillip Castellano, located upon said premises, and advised him of their tax deed to said premises."

The circuit court conducted a trial on Castellano's section 2-1401 petition on December 3, 2008. At the trial, Castellano testified in support of his petition, and S.I. Securities presented the testimony of two of its employees. Unfortunately, the trial testimony was somewhat vague and unspecific at times with respect to certain events.

10

S.I. Securities employee Keith Wall testified that he was an abstractor and that he had inspected Lot Four in Kent's Second Addition for S.I. Securities. Counsel for S.I. Securities asked Wall when he first inspected the property, and he testified that, in general, he inspects properties after the tax sale, before the next year's taxes, to determine whether S.I. Securities should pay the upcoming taxes or not. When asked again about when he first inspected the property, he stated: "It was purchased at the tax sale, I think, maybe in October or September of that year. And then before we paid the next year's taxes, I looked at it in the summertime. It was probably June or July, something like that." He testified about this first inspection of the property as follows:

"I went by and saw that it was a vacant lot. There was, looked to me, like some scattered blocks on the property that had grass growing up a little bit, and there was a very large lot. I went back to the courthouse, looked at the aerial, came back[,] and looked at it just to make sure."

Wall then testified about visiting the property a second time for S.I. Securities. Wall initially testified that he did not go back to inspect the property a second time "until they had a tax deed on the property." He testified that he went out there to post a "sign for a vacant lot" and testified that the sign was a "for sale sign." He testified that when he arrived at the property for the second visit, he noticed that there was a "shell of a house" on the previously vacant lot and that he, therefore, did not post the "sign." He testified that he then measured the lot for the first time and determined that the property line to Lot Four crossed over into a part of the house that Castellano then lived in.

Whether Castellano's house existed when Wall first visited the property is entirely unclear from the record. During direct examination, S.I. Securities' counsel asked Wall the following question: "So the vacant lot that you saw the first time is what you believed to be the boundaries complete?" Wall responded, "Between the two houses, yeah." This testimony

11

seems to indicate that the house on Lot Two might have been present during Wall's first visit to the property, but whether Wall was referring to Castellano's house on Lot Two as one of the "two houses" he saw during his first visit or whether the houses he saw were neighboring houses on either side of Lot Four is uncertain and not clarified in the record.

Although Wall initially testified during direct examination that he revisited the property only after S.I. Securities had obtained its tax deed and that he went out to the property to post some sort of a "sign," a short time after giving this testimony, he contradicted this time frame during further questioning on direct examination. The following colloquy took place during the direct examination between counsel for S.I. Securities and Wall:

"Q. During–prior to the proceedings–or acquiring the tax deed, did you ever have the occasion to speak with Mr. Castellano regarding the proceedings?

A. At the time when I went out there and measured and saw that the house was part of his garage, part of some of his house was on this lot–I knew him. I had done some work for him over in Jackson County on a piece of property. And I thought, we have got a mess here.

So I actually went to him with a certificate number and gave it to him and talked to him. And I said, 'Phil, you have got about two weeks. You are going to lose your property if you don't redeem these properties.'

***

And he said, 'Okay, I'll have Jimmy take care of it,' meaning Jimmy Powless. And I said, 'Well, I know Jim.' I said, 'I wish you would take care of it,' I said, 'because sometimes Jim doesn't cross his T's and dot his I's.' I said, 'You need to go get this redeemed.'

And a few weeks went by, and I saw him at the old Marion gas station. And

I said, 'Phil, did you get those redeemed?' He said, 'Yeah, I took care of it.' So I thought it had been redeemed."

Wall testified that he found out several months later that Castellano had not redeemed the taxes, and he testified that he did not intend to deceive Castellano or conceal the fact that S.I. Securities was getting a deed. Wall testified that he went to Castellano specifically because he wanted him to know what was going on. Later, during cross-examination, Wall testified he knew that Castellano lived in the house before August 15, 2000, the date of S.I. Securities' affidavit in support of its tax deed. On cross-examination, Wall testified that he conveyed that information to his superiors "at some point."

In addition to Wall, S.I. Securities also presented the testimony of its agent, Julie Hume, who had prepared the August 15, 2000, affidavit in support of the petition for a tax deed. Hume testified that she handled all the filings and the petitions for tax deeds for S.I. Securities. Hume testified that prior to her affidavit, Wall had inspected the property and reported that the lot was vacant with a concrete slab on it. Her knowledge of when this inspection took place, to whom Wall reported his findings, and when Wall reported his findings are all unclear from Hume's testimony.

Hume testified that she drove by the property sometime prior to going to court, that she saw a concrete slab on the vacant lot, and that there was no other structure on the property at that time. Again, exactly when this drive-by took place was not established in the testimony. She testified that when she drove by, she did not measure the vacant lot. She simply drove by and saw that there was no one living on the vacant lot. She believed Lot Four in Kent's Second Addition was vacant; therefore, she alleged that the lot was vacant in the affidavit in support of S.I. Securities' petition for a tax deed.

Hume testified that it was a "substantial time" later, sometime after Castellano filed his section 2-1401 petition, when she learned that "someone had found that there was

13

possibly encroachment of the house next door on to that property." Hume testified that she had no knowledge of Wall's conversation with Castellano prior to the filing of her affidavit and did not intend to deceive Castellano in regards to S.I. Securities acquiring the tax deed to Lot Four. Hume testified that Marion and Roberta Castellano were the titleholders of record for the property and that they received notice of the tax proceeding. She testified that no one at S.I. Securities attempted to hide the tax proceeding before or after the acquisition of the tax deed.

Castellano testified that he began living in the house on Lot Two in Kent's Third Addition sometime in 1999 and had continuously lived in the house since that time. He testified that he was buying Lot Two on a contract for deed from his brother, Marion, and that between himself and his brother, they had paid the real estate taxes on Lot Two. Castellano testified that the real estate taxes for Lot Two were issued to his brother, Marion Castellano, and his wife, Roberta. Castellano admitted into evidence a tax bill for Lot Two in Kent's Third Addition for 2001 real estate taxes payable in 2002. The tax bill was addressed to Marion Castellano and stated that the lot was "a sub of former Lot 4 and Monte Dr. in Kent's 2nd Addn." When asked if those taxes were paid in November of 2002, he testified that, to the best of his knowledge, his brother "paid on it."

At the trial, Castellano did not specify when he started building the house on Lot One in Kent's Third Addition, but he only testified that he started building on Lot One in Kent's Third Addition "quite some time ago." Castellano testified that after he had the conversation with Wall about the back taxes, he went to the county clerk's office and asked about redeeming taxes on "Lot 1 of Kent's Third Addition." He did not testify concerning when his conversation with Wall took place or when he talked to the county clerk's office. Castellano testified he paid the taxes for Lot One that the clerk told him were due. He testified that he did not know to ask about past taxes due for Lot Four in Kent's Second

14

Addition and that no one ever gave him written notice about back taxes owed for Lot Four in Kent's Second Addition.

At the conclusion of the evidentiary hearing, the circuit court took the matter under advisement. On December 12, 2008, the circuit court entered a judgment in favor of Castellano that vacated the August 16, 2000, judgment for a tax deed. The circuit court found that S.I. Securities' assertion, at the time it acquired its tax deed, that it visited the lot and determined it to be vacant was a false statement. The court found that Wall knew that Castellano lived on the property before August 15, 2000, the date of S.I. Securities' affidavit, but that S.I. Securities never gave Castellano statutory notice.

In addition, the circuit court found that S.I. Securities failed to provide Castellano notice of the tax deed during the two years following the issuance of the tax deed. The trial court found that S.I. Securities first informed Castellano of the existence of the tax deed a little more than two years after the tax deed was issued. The court concluded that S.I. Securities' action of nondisclosure amounted to fraud and that the timing of the disclosure to Castellano showed intentional conduct on the part of S.I. Securities to prevent Castellano from being able to contest the propriety of the issuance of the tax deed. The court held that S.I. Securities engaged in fraud to obtain the tax deed and that the nondisclosure by S.I. Securities prevented Castellano from being able to contest the issue of whether the tax deed was the result of a sale in error. Therefore, the circuit court vacated the order authorizing the issuance of a tax deed pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2008)).

On January 8, 2009, S.I. Securities filed a motion to reconsider that requested the circuit court to reconsider its order vacating the judgment for the tax deed. Alternatively, S.I. Securities asked the circuit court to direct the county collector to refund all the taxes it paid on the property. The circuit court denied S.I. Securities' motion to reconsider.

15

Although exhibits attached to the motion to reconsider that were not admitted into evidence at the trial cannot be considered in analyzing the circuit court's judgment on appeal, we note that S.I. Securities' motion to reconsider included, as an exhibit, real estate tax bills for Lot One in Kent's Third Addition for the following years: 1999, 2002, 2003, 2004, 2005, 2006, and 2007. S.I. Securities alleged in its motion to reconsider that it paid the real estate taxes assessed on Lot One in Kent's Third Addition for those years and sought reimbursement for the payment of those taxes. S.I. Securities did not allege that it paid any real estate taxes assessed for Lot Two in Kent's Third Addition at any time. There is no other evidence in the record concerning the history of assessments and payments of taxes on the three lots in question.

ANALYSIS

In analyzing the circuit court's judgment that granted Phillip Castellano's section 2-1401 petition, we must first determine the proper standard of review. The Illinois Supreme Court has identified five types of final dispositions that are possible in section 2-1401 litigation: "the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved." *Vincent*, 226 Ill. 2d at 9. The *Vincent* court essentially held that the standard by which we should review the trial court's disposition of a section 2-1401 petition depends upon the manner in which it was disposed. See *Vincent*, 226 Ill. 2d at 15-17.

The *Vincent* court held that the *de novo* standard of review applies to section 2-1401 dispositions where the trial court either dismisses the petition or grants or denies relief based on the pleadings alone. *Vincent*, 226 Ill. 2d at 16. As to the remaining types of dispositions possible in section 2-1401 litigation, *i.e.*, a grant or denial of relief after an evidentiary hearing, the court stated, "Concerns about the proper standard of review applicable to those

16

dispositions must necessarily await other cases." *Vincent*, 226 Ill. 2d at 17. However, the court stated, "[T]he touchstone of such future analyses will be *** grounded in the notion that each of the dispositions available in a section 2-1401 action is borrowed from our civil practice and pleadings rules." *Vincent*, 226 Ill. 2d at 17.

In the past, Illinois courts have left the issue of whether to grant or deny a section 2-1401 petition to the sound discretion of the trial court. *In re Marriage of Frazier*, 203 Ill. App. 3d 847, 851 (1990). However, in *Vincent*, the supreme court stated that this standard of review was incorrect and stemmed from the erroneous view that a section 2-1401 petition invoked the equitable powers of the court to promote justice and fairness. *Vincent*, 226 Ill. 2d at 15. The court held that relief under section 2-1401 was not an equitable remedy but was a statutory remedy that was "subject to the usual rules of civil practice." *Vincent*, 226 Ill. 2d at 15. Although the *Vincent* court did not address the standard of review for the grant or denial of section 2-1401 relief after an evidentiary hearing, the court noted, in *dicta*, that the abuse-of-discretion standard did not "match up" with a review of a trial court's decision after an evidentiary hearing since the abuse-of-discretion standard was not "tied to any quantum of proof." *Vincent*, 226 Ill. 2d at 17 n.5. The court pointed out that the grant or denial of relief after a civil bench trial is traditionally reviewed under the manifest-weight-of-the-evidence standard. *Vincent*, 226 Ill. 2d at 17 n.5 (citing *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 124 (1985)).

In the present case, the circuit court granted Castellano's section 2-1401 petition after conducting an evidentiary hearing and making certain findings of fact. Accordingly, we will review the circuit court's judgment under the manifest-weight-of-the-evidence standard. A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *In re A.W.*, 231 Ill. 2d 241, 254 (2008).

As noted above, Castellano initiated his section 2-1401 proceeding more than two

years after the circuit court entered the August 16, 2000, judgment that directed the issuance of the tax deed. Therefore, before the circuit court could consider the merits of the section 2-1401 petition, Castellano was required to prove that S.I. Securities fraudulently concealed the grounds for relief, justifying a tolling of section 2-1401(c)'s two-year statute of limitation. *Bank of Ravenswood v. Domino's Pizza, Inc.*, 269 Ill. App. 3d 714, 726 (1995) (a petition that is not filed within the two-year limitations period is barred from consideration on the merits).

Section 2-1401's two-year statute of limitations cannot be extended by "judicial fiat." *Sidwell v. Sidwell*, 127 Ill. App. 3d 169, 173 (1984). Instead, the supreme court has held that "the 2-year limitation mandated by section [2-1401(c)] must be adhered to in the absence of a clear showing that '*** the ground for relief is fraudulently concealed.' " *Crowell v. Bilandic*, 81 Ill. 2d 422, 427 (1980) (quoting Ill. Rev. Stat. 1977, ch. 110, par. 72(3) (now 735 ILCS 5/2-1401(c) (West 2008))). The purpose of section 2-1401's time limitation is to "establish necessary stability and finality in judicial proceedings." *Crowell*, 81 Ill. 2d at 427-28.

In the present case, we believe that the circuit court's finding that S.I. Securities fraudulently concealed the grounds for section 2-1401 relief was against the manifest weight of the evidence. Therefore, we hold that the circuit court improperly considered the merits of Castellano's untimely section 2-1401 petition.

The standard for proving fraudulent concealment sufficient to toll a statute of limitations has been long established by the Illinois Supreme Court. "In general, where a plaintiff alleges that the fraudulent concealment of a cause of action has tolled the statute of limitations, it is necessary to show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim." *Foster v. Plaut*, 252 Ill. App. 3d 692, 699 (1993) (citing *Skrodzki v. Sherman State Bank*, 348 Ill. 403, 407 (1932)). "Silence alone on the part of the defendant, accompanied by the failure of the plaintiff to

discover the cause of action, ordinarily does not constitute fraudulent concealment." *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 561 (1980).

The fraudulent misrepresentations that form the basis for the cause of action do not constitute fraudulent concealment in the absence of a showing that the misrepresentation tended to conceal the cause of action. *Skrodzki*, 348 Ill. at 407. Furthermore, even if the section 2-1401 petitioner can show that the respondent made fraudulent misrepresentations, the statute of limitations will not be tolled where the petitioner could have discovered the grounds for section 2-1401 relief with the exercise of ordinary diligence. *Foster*, 252 Ill. App. 3d at 699; *Johnson v. Valspar Corp.*, 251 Ill. App. 3d 564, 578-79 (1993).

For example, in *Skrodzki*, the plaintiff brought a lawsuit against a bank alleging that the bank fraudulently induced the plaintiff to invest in gold bonds with the false representation that the bonds were secured by a first mortgage on certain real estate. *Skrodzki*, 348 Ill. at 404. The bonds were actually secured by a second lien on the property and became worthless after the prior lien on the property was foreclosed. *Skrodzki*, 348 Ill. at 404. For its defense, the bank pleaded, among other defenses, a statute of limitations that required the plaintiff's action to be brought within five years. *Skrodzki*, 348 Ill. at 405. The plaintiff countered that the bank fraudulently concealed the cause of action by paying interest due on the bonds for several years after the foreclosure of the prior lien. *Skrodzki*, 348 Ill. at 405. The plaintiff maintained that because the bank had paid the interest on the bond, he had no reason to suspect that the bonds he had purchased were not first mortgage bonds. *Skrodzki*, 348 Ill. at 407. The court, however, disagreed. *Skrodzki*, 348 Ill. at 408. The court noted that at the time the plaintiff purchased the bonds, the prior lien was recorded in the recorder's office. *Skrodzki*, 348 Ill. at 408. The court stated, "The records of the recorder's office are public records and open alike to all parties." *Skrodzki*, 348 Ill. at 408. Therefore, the plaintiff "had constructive notice of what those records contained." *Skrodzki*, 348 Ill. at

19

408. The court concluded that the acts which constituted fraud were open and public. *Skrodzki*, 348 Ill. at 408. Accordingly, the court held that the evidence was insufficient to toll the statute of limitations. *Skrodzki*, 348 Ill. at 408-09.

In the present case, Castellano presented insufficient evidence to establish a basis for tolling section 2-1401's two-year statute of limitations. Fraudulent concealment requires some affirmative act and mere silence is insufficient, and there was no evidence presented that S.I. Securities took steps to conceal the August 16, 2000, judgment. At best, Castellano established that S.I. Securities remained silent about the tax deed until a little more than two years after it was issued. On appeal, Castellano has not presented any cases, and we have found none, to establish that S.I. Securities' silence after obtaining the tax deed constituted fraudulent concealment. In light of the overwhelming authority in Illinois that fraudulent concealment is not shown unless it is demonstrated that S.I. Securities concealed the section 2-1401 cause of action by some affirmative act or representation, we are compelled to reverse the trial court's finding of fraudulent concealment under the evidence presented at the trial.

Furthermore, everything S.I. Securities did in the tax proceeding was a matter of public record. If it committed fraud, it committed it openly and in public. The affidavit in support of the petition for tax deed was filed with the circuit clerk, and the tax records for Lot Four in Kent's Second Addition, as well as the tax records for Lot One and Lot Two in Kent's Third Addition, are public records available to all parties. The tax deed was recorded in the county recorder's office on the day it was issued. When Castellano acquired his unrecorded interests in Lot One and Lot Two in Kent's Third Addition, the tax assessments and the tax payment history for Lot Four in Kent's Second Addition were matters of public record. Although not crucial to our analysis, we also note that Castellano's brother, Marion, who was the owner of record of the properties, received notices of the tax sale, of the right to redeem the taxes, and of S.I. Securities' petition for a tax deed. Also, the circuit court

20

found that an agent for S.I. Securities actually told Castellano of the tax proceeding, and the agent's testimony indicated that he furnished Castellano with a tax certificate number prior to S.I. Securities obtaining its tax deed. Castellano did not deny receiving the tax certificate number, and he never investigated that tax number at the county clerk's office.

Therefore, under these facts presented at the trial, Castellano could have and should have, through the exercise of ordinary diligence, become aware of the ground for relief under section 2-1401 before the expiration of two years after the entry of the August 16, 2000, judgment. Under the facts that are contained in the record provided us, we cannot affirm a finding of fraudulent concealment sufficient to toll section 2-1401's two-year statute of limitations.

Castellano argues, alternatively, that the order directing the issuance of the tax deed was void. Castellano argues that the circuit court lacked jurisdiction to enter the judgment directing the issuance of the tax because Lot Four in Kent's Second Addition no longer existed at the time the judgment was entered. He concludes that he could attack the void judgment at any time. We agree with Castellano that if the judgment is void, then it could be set aside at any time under section 2-1401(f) regardless of whether two years had elapsed from the date of the judgment (735 ILCS 5/2-1401(f) (West 2008)). *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002) ("Petitions brought on voidness grounds need not be brought within the two-year time limitation"). However, we disagree with Castellano's conclusions that the circuit court lacked jurisdiction and that the August 16, 2000, judgment is void.

A tax deed proceeding is not *in personam* but is *in rem* in nature; therefore, the court acquires jurisdiction after the county collector makes his application for a judgment and order of sale. *In re Application of the County Treasurer & ex officio County Collector of Cook County, Illinois*, 386 Ill. App. 3d 906, 909 (2008). "The jurisdiction over the land itself

21

grants power to the court to act, and thus, any doubt about the fulfillment of the notice requirements goes to whether the court should order the tax deed issued, not whether the court has jurisdiction in the matter." *In re Application of the County Treasurer & ex officio County Collector of Cook County, Illinois*, 386 Ill. App. 3d at 909. The court lacks jurisdiction over a property if the taxes have been paid or the property is tax-exempt. *In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Petition for Tax Deed of Barnard*, 228 Ill. App. 3d 719, 731 (1991).

In the present case, the county collector's application for a judgment and order for sale and the subsequent notices of the sale described the property as Lot Four in Kent's Second Addition, but prior to the assessment of the taxes and prior to the tax proceeding, the property had been replatted as Lot One and Lot Two in Kent's Third Addition. The supreme court has stated that in tax proceedings, the description of the land is "one of the essential elements of a notice, and, unless the notice describes the land in such a manner that it may be identified from that description, the court had no jurisdiction to render a judgment against the land." *Pickering v. Lomax*, 120 Ill. 289, 297-98 (1887), *rev'd on other grounds by* 145 U.S. 310, 36 L. Ed. 716, 12 S. Ct. 860 (1892).

However, in the present case, the apparent incorrect description of the property in the notices did not deprive the circuit court of jurisdiction to issue the tax deed because the property description was sufficiently certain to designate the specific property at issue. Lot Four in Kent's Second Addition describes the land at issue in a way that it may be identified from that description with certainty. "A reasonable degree of certainty in the description of real estate for purposes of taxation is sufficient." *People ex rel. McDonough v. Klein*, 353 Ill. 80, 81 (1933). The court acquired jurisdiction over the designated property when the county collector made an application for a judgment and order of sale. There is nothing in

22

the record that shows that the delinquent taxes had been paid to the county or that the property was tax-exempt so as to deprive the circuit court of its jurisdiction. We note that at the trial, Castellano did not present a tax bill for 1996 real estate taxes payable in 1997 for either Lot One or Lot Two in Kent's Third Addition or any evidence that those taxes were ever assessed or paid. Therefore, the record does not reflect that the 1996 real estate taxes assessed on Lot Four in Kent's Second Addition constituted a double assessment of the property.

Once the circuit court acquired jurisdiction over the *in rem* proceeding, it had the power to decide whether to issue the tax deed. The property might have been inaccurately described during the proceedings, but the description was, nonetheless, sufficiently certain. At most, the incorrect description rendered the tax deed voidable, not void. See *Elliott v. Johnson*, 156 Ill. App. 3d 70, 74 (1987) (an incorrect description of the property subject to a tax deed as set forth in the notice received by the property owner did not render the judgment void). We hold that the tax deed order in the present case was not void and that section 2-1401(f) of the Code is not applicable in the present case.

Accordingly, the circuit court erred in addressing the merits of Castellano's section 2-1401 petition. We realize that the forced sale of a home "is a grave and melancholy event" (*Smith v. D.R.G., Inc.*, 63 Ill. 2d 31, 39 (1976)) with severe consequences for the delinquent taxpayer. However, the State has a competing interest in seeing that taxpayers pay their real estate taxes, and providing tax purchasers with marketable titles furthers this purpose. *Killion*, 333 Ill. App. 3d at 1191. The legislature has attempted to balance the property owner's and tax purchaser's competing interests by allowing for a collateral attack of tax deed orders in limited circumstances and only as allowed under section 2-1401 of the Code. *Killion*, 333 Ill. App. 3d at 1191; 35 ILCS 200/22-45 (West 2008). Since Castellano did not timely file his section 2-1401 petition, did not establish that S.I. Securities fraudulently

concealed its tax deed, and did not establish that the circuit court's tax deed judgment was void, we must reverse the circuit court's judgment that granted Castellano relief under section 2-1401.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Williamson County that vacated the August 16, 2000, order directing the issuance of the tax deed.

Reversed.

CHAPMAN and WEXSTTEN, JJ., concur.

NO. 5-09-0110

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| S.I. SECURITIES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 00-TX-10 |
| | ) | |
| JAMES K. POWLESS *et al.*, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PHILLIP CASTELLANO, | ) | Honorable |
| | ) | Ronald R. Eckiss, |
| Respondent-Appellee. | ) | Judge, presiding. |

---

**Rule 23 Order Filed:** April 12, 2010
**Motion to Publish Granted:** May 12, 2010
**Opinion Filed**: May 12, 2010

---

**Justices**: Honorable Bruce D. Stewart, J.

Honorable Melissa A. Chapman, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorney for Appellant** Glenn R. Tetzlaff, 106 West Jackson, Marion, IL 62959

---

**Attorneys for Appellees** Rex G. Burke, 907 Chestnut Street, P.O. Box 417, Murphysboro, IL 62966-0417 (attorney for Phillip Castellano); Richard O. Hart, Hart & Hart, P.C., 602 W. Public Square, P.O. Box 937, Benton, IL 62812 (**NO BRIEF FILED on behalf of Wells Fargo Bank Minnesota, N.A.**)