**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 09 2012, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENT-CHILD RELATIONSHIP OF L.J., and R.J., III, MINOR CHILDREN AND THEIR MOTHER, V.A., and THEIR FATHER, R.J., | ) ) ) ) ) ) | |
| Appellants-Respondents, | ) ) | |
| vs. | ) ) | No. 49A02-1108-JT-804 |
| MARION COUNTY DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |
| and, | ) ) | |
| CHILD ADVOCATES, INC., | ) ) | |
| Co-Appellee-Guardian ad Litem, | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Rosanne Ang, Magistrate

**April 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

### Case Summary

V.A. ("Mother") and R.J. ("Father") appeal the termination of the parent-child relationship with their children, L.J. and R.J., III. We affirm.

### Issue

Mother and Father raise one issue, which we restate as whether there is sufficient evidence to support the termination of their parental rights.

### Facts

L.J. was born on June 14, 2006, and R.J., III, was born on October 31, 2007. At that time, Mother and Father lived in Indianapolis. On September 1, 2008, the Department of Child Services ("DCS") filed a petition alleging that the children were in need of services ("CHINS") because Mother and Father failed to provide them with a safe and stable home environment and appropriate supervision. The petition stated in part that Mother and Father had been evicted from their apartment, which lacked functioning utilities, and that Mother and Father did not have stable employment or income.

On September 28, 2008, the children were removed from Mother and Father's custody and placed in foster care. In November 2008, with Mother and Father's approval, the children were placed in foster care with Father's cousin and her husband, in

Lake County, where they remained throughout the proceedings.[1] In February 2010, DCS changed its plan for the children from reunification to termination. Hearings on the petition to terminate the parent-child relationship were held on February 28, 2011, March 25, 2011, and May 20, 2011.

From the time of the children's removal until July 2009, Mother remained in Indianapolis and initially participated in services. Mother, however, did not maintain steady employment or obtain stable housing. In July 2009, Mother, who was pregnant with her third child,[2] moved to Gary, where she continued to receive services but was still unable to maintain steady employment and stable housing. Mother's participation in services and visitation with the children became sporadic. In May 2010, Mother moved to Highland, Michigan, and in October 2010, Mother moved to Springfield, Illinois. In August, October, and December 2010, the foster mother denied Mother's request to visit the children until Mother showed she was "a constant in their lives." Tr. p. 345. At the time of the May 2011 termination hearing, Mother had not successfully completed the services provided to her, had not maintained steady employment, had had twelve different living arrangements since the initiation of the CHINS proceeding, and had not visited with the children since she moved to Michigan in May 2010.

In early 2009, Father stopped participating in services. He was not referred for services in Lake County because he was incarcerated. Father eventually moved to

---

[1] The case was not transferred to Lake County because Father's cousin is a DCS family case manager in Lake County.

[2] This child was not the subject of a CHINS proceeding or other DCS involvement.

Michigan and, in July 2010, was arrested for two counts of armed robbery. At the time of the termination hearing, Father was incarcerated in Michigan on a six-year sentence for armed robbery.

On July 28, 2011, the trial court issued an order terminating Mother's and Father's parental rights. In its order the trial court concluded:

> 43. There is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied. [Mother] has established a pattern of instability of income and housing through her frequent moves and inability to meet her financial obligations for her residences. [Mother] has not shown the ability to maintain financial stability since the initiation of the Child in Need of Services action. [Mother] has failed to work the service providers who were assigned to assist her with achieving stability for the children, has moved out of state and has failed to maintain even telephonic contact with the children. [Father] has been incarcerated for a significant portion of the children's lives due to acts he committed as recently as the year 2010 and participated in only one hour of home based counseling, a service designed to assist him in reunifying with his children.
>
> 44. Termination of the parent-child relationship is in the best interests of the children. The children are currently in a pre-adoptive placement which has been their home since November 2008. The children are doing well and thriving in their current placement.

App. p. 32. Mother and Father now appeal.

## Analysis

Mother and Father contend that the evidence is insufficient to support the termination of their parental rights. "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d

4

1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:

5

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).[3]  DCS has the burden of proving these allegations by clear and convincing evidence.  I.A., 934 N.E.2d at 1133.

## I.  Conditions Resulting in Removal

Mother and Father argue that the trial court's conclusion that the conditions resulting in the children's removal will not be remedied is based on Mother's frequent moves and lack of stable income earlier in the proceedings.  In determining whether the conditions that led to a child's removal will not be remedied, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions.  In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).  "However, the trial court must also 'evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the

---

[3]   The petition to terminate the parent-child relationship was filed before this statute was amended effective March 12, 2010, to include the language regarding two prior CHINS adjudications.  See I.C. § 31-35-2-4(b)(2)(B)(iii).   Because both parties reference the current version of the statute and the amendment does not affect the outcome of this appeal, we also cite the current version of the statute.

6

child.'" Id. (quoting In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied). The trial court may consider services offered by the DCS and the parent's response to those services. Id. DCS is not required to rule out all possibilities of change, but only needs to establish that there is a reasonable probability the parent's behavior will not change. Id.

Although Mother testified at the May 2011 hearing that she was receiving TANF and other benefits for her third child and was receiving student loans and grants to attend school to become a paramedic, the evidence showed Mother was inconsistent, at best, at maintaining her career goals. During the course of the proceedings Mother had jobs at a grocery store, a telemarketing firm, Macy's, Maytag, and as a dancer. The evidence also showed that Mother had previously earned an associate degree in business management but that was not the type of job she wanted, so she "took another career path." Tr. p. 428. Mother testified that she completed CNA classes in 2009, but did not take the exam. At the time of the hearing, Mother had completed the class work to be a medic, was signed up to take the medic test in July, would not complete the paramedic coursework until the fall of 2012, and was not otherwise employed.

Regarding housing, the evidence showed that from September 2008 until the May 2011 hearing, Mother had had twelve different living arrangements. The evidence showed that Mother was evicted from at least one apartment and broke the lease on another. At the time of the May termination hearing, she had been residing in her current apartment for only one month.

As for Father, it is undisputed that Father stopped participating in services in May 2009 because the services required by DCS and his probation and parole were "too overwhelming." Id. at 236. At the time of the termination hearing, Father was serving a six-year sentence for a crime he committed while the DCS proceedings were ongoing.

The trial court's findings clearly show that it considered Mother's testimony regarding her circumstances at the time of the May 2011 hearing. In light of Mother's patterns of habitual conduct, however, it is clear that the trial court did not find Mother's assertions of changed circumstances to be credible. Accordingly, there is clear and convincing evidence of a reasonable probability that the conditions resulting in the removal will not be remedied.

Mother also argues that poverty, without proof of abuse, neglect, or lack of attempt to remedy the situation, cannot be a basis for the termination of parental rights. Mother relies on In re D.T., 547 N.E.2d 278, 285 (Ind. Ct. App. 1989), in which we observed "that factors such as low income or inadequate housing are by themselves not sufficient grounds to terminate parental rights."

Here, the trial court's findings were not based solely on Mother's and Father's economic circumstances. The trial court's findings also referenced domestic violence between Mother and Father and Mother's refusal to go to a domestic violence shelter or obtain a protective order against Father, the SWAT team's execution of a warrant for Father at the family residence, Mother's and Father's non-compliance with home-based counseling, Mother's voluntary move to Michigan while services were ongoing, Mother's

failure to maintain regular contact with the children, and Father's criminal history and current incarceration.

Further, although there is evidence that Mother's third child has been well cared for, that evidence does not establish that Mother could adequately provide for and care for all three children. In fact, the Guardian Ad Litem ("GAL") testified that his opinion regarding termination was not affected by the non-removal of Mother's third child because "it's easier to care for one child, an infant, than it is for two growing children who have needs and want to participate in activities that stretch your parenting skills." Tr. p. 281. Mother and Father have not established that the trial court's conclusion is clearly erroneous.

## II. Best Interests

Mother and Father assert that the evidence that termination was in the children's best interest was not based on the parents' circumstances at the time of the termination hearing. Specifically, the family case manager testified that termination of the parent-child relationship was in the children's best interests because they are in a stable environment where they have thrived and grown. The GAL recommended terminating the parent-child relationship because the children were doing very well in their current environment, their needs were being taken care of, and they were maturing and growing.

Although, according to Mother's May 2011 testimony, she had suitable housing and income at that moment, Mother's conduct from September 2008 until then painted a different picture to the family case manager and GAL. During that time, Mother did not complete services offered by DCS, did not maintain regular contact with the children, and

did not maintain a consistent source of income and suitable housing. That Mother had only recently rented an apartment and was enrolled in school was for the trial court to consider in weighing the family case manager's and the GAL's testimony regarding the children's best interests. We will not reweigh that evidence. See I.A., 934 N.E.2d at 1132.

As for Mother and Father's questioning of whether the children's improved behavior was due to their age, them being comfortable in their foster home, or positive factors in the foster home, this too was a question for the finder of fact to resolve. Mother and Father also assert there was no showing that the foster parents were not willing to continue to keep the children until they could be reunified with Mother and that there was no showing that the continuation of the wardship would have an impact on the children. Even assuming the foster parents were willing to continue the current arrangements, the GAL testified that the children needed permanency after such a long time and that the failure to provide that is "detrimental to their wellbeing." Tr. p. 260. He testified that the children have been in the system for "far too long . . . ." Id. at 261.

Thus, there is clear and convincing evidence to support the trial court's findings that children have exhibited positive changes while in the foster home, are thriving, happy, and healthy, and are in need of permanency. Mother and Father have not established that the trial court's conclusion that the termination of the parent-child relationship is in the children's best interests is clearly erroneous.

**Conclusion**

Mother and Father have not established that there is insufficient evidence to support the termination of the parent-child relationship. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.