# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JOSEPH L. MULVEY**
Rubin & Levin, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN S. MERLAU**
New Palestine, Indiana



FILED

May 22 2014, 10:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| YELLOWBOOK INC. f/k/a YELLOW BOOK SALES AND DISTRIBUTION COMPANY, INC., | ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 30A05-1311-CC-561 |
| CENTRAL INDIANA COOLING & HEATING, INC. and LAWRENCE E. STONE aka LARRY STONE, | ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1110-CC-2115

**May 22, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Yellow Book Inc. f/k/a/ Yellow Book Sales and Distribution Company, Inc. (Yellow Book), appeals the trial court's findings of fact and conclusions of law in favor of Appellee-Defendant, Central Indiana Cooling & Heating, Inc. (Central Indiana) and Lawrence E. Stone (Stone), with respect to Central Indiana's payments made pursuant to several advertising contracts entered into with Yellow Book.

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

Yellow Book raises three issues on appeal, which we restate as follows:

(1) Whether the trial court erred by concluding that Yellow Book failed to credit certain Central Indiana payments totaling $19,717.10;

(2) Whether the trial court erred by concluding that Stone properly cancelled an advertising contract with Yellow Book; and

(3) Whether the trial court erred by concluding that Yellow Book is not entitled to recover prejudgment interest and reasonable attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Stone is the owner of Central Indiana, which is essentially a small, one-man corporation, that installs commercial and residential cooling and heating systems. On October 8, 2007, Stone entered into a contract with Yellow Book to advertise his business throughout central Indiana (Contract 1). Pursuant to Contract 1, Stone agreed to pay

2

Yellow Book $3,037.00 per month for twelve months to publicize his services in Yellow Book's Indianapolis, Shelby County, and Hancock County directories.

The following year, on October 27, 2008, Jill Herman, on behalf of Central Indiana, executed a new advertising contract with Yellow Book (Contract 2). In accordance with the terms of Contract 2, Central Indiana agreed to pay Yellow Book a monthly amount of $553.00 for twelve months to promote Central Indiana's business in the Hamilton and Hancock County directories.

On February 20, 2009, Stone executed a contract with Yellow Book for advertisements in central Indiana (Contract 3). Contract 3 provided that Stone was to pay Yellow Book $2,542.00 per month for twelve months in exchange for advertising Central Indiana in Yellow Book's 2010 Indianapolis directory.

On August 3, 2011, Yellow Book filed its Complaint against Central Indiana in the Marion County Circuit Court, seeking recovery of damages arising from Central Indiana's failure to pay for the advertising provided pursuant to the three Contracts and Stone's personal guarantee on two of the advertising contracts. The case was subsequently transferred to Hancock County Superior Court. On July 22, 2013, a bench trial was conducted. On August 28, 2013, the trial court entered its findings of fact and conclusions of law, issuing judgment as follows:

> [Central Indiana and Stone] entered into a contract with [Yellow Book] and there was miscommunication between [Central Indiana and Stone] and [Yellow Book]. The [c]ourt finds [Central Indiana and Stone] to be appropriately credited for payments he testified he made to [Yellow Book] which were not applied to the contract in the amount of $19,707.10 which leaves [Yellow Book] with a judgment in the amount of $22,135.07 with

3

interest in the amount of $3,984.31. There will be no award of attorney fees in said matter.

(Appellant's App. p. 25).

On September 12, 2013, Central Indiana and Stone filed their motion to correct error, claiming that because Stone had cancelled Contract 3, Central Indiana did not owe anything to Yellow Book after certain uncredited payments were applied to the indebtedness owed on Contracts 1 and 2. On September 23, 2013, Yellow Book filed its response to the motion to correct error, as well as a cross-motion to correct error. In its cross-motion, Yellow Book requested the trial court to enter an amended judgment for the full amount sought by Yellow Book because the evidence reflected that all payments made by Central Indiana and Stone had been properly credited and Contract 3 had not been cancelled. On October 4, 2013, the trial court conducted a hearing on the parties' motions and on October 18, 2013, the trial court entered its Order on the Parties [Motions] to Correct Error, finding that Contract 3 was properly cancelled and amending the judgment "for [Central Indiana and Stone]" and "against [Yellow Book] cost paid." (Appellant's App. p. 53).

Yellow Book now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Where, as here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Helm v. Helm*, 873

4

N.E.2d 83, 87 (Ind. Ct. App. 2007). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence mist favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only . . . the issues they cover and a general judgment will control as to the issues upon whether there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

## II. *Crediting of Payments*

Yellow Book contends that Central Indiana paid a total of $25,876.27 under Contract 1, and incurred late fees in the amount of $845.93, leaving an unpaid balance to Yellow Book on Contract 1 of $11,413.67. Contract 2 was executed for a total amount of $6,636.00; Central Indiana did not make any payments under this Contract. However, the trial court concluded that Central Indiana had made payments in the amount of $19,717.10 which had not been properly credited by Yellow Book to Central Indiana's accounts, thereby entitling Yellow Book to no further debit. Yellow Book now disputes the trial court's conclusion.

At trial, Yellow Book's corporate paralegal representative, Natalia Anderson (Anderson), testified as to Central Indiana's payments under the Contracts. Anderson clarified the payments made and amounts owed by Central Heating to Yellow Book under the Contracts. She explained that it is Yellow Book's practice to apply the payments to the older directories first and then "to the oldest balance outstanding on the

5

directories." (Transcript p. 20). As such, Anderson stated that all of Central Indiana's checks—which Central Indiana claimed to be uncredited—were divided up to be applied to the oldest balance first.

During Stone's cross-examination, Stone was asked to compare each of the perceived uncredited payments with the payments as reflected on Yellow Book's Statement of Account. For example, Stone had previously testified that a payment made on July 5, 2009 in the amount of $4,566 had not been credited. However, during questioning, he conceded that this payment had been divided into four separate payments of $200, $3,838.00, $353.00, and $179.00 and had been credited towards separate balances or directories on July 13, 2009. At the conclusion of his interrogation, Stone admitted that all payments, with the exception of two, "were credited" by Yellow Book to the Contracts executed by Central Indiana. (Tr. p. 97). Unlike for the other payments, Stone did not submit any evidence that the two missing payments that had not been credited by Yellow Book had, in fact, been made by Stone in the first place.

In support of his argument that his payments had not been properly credited towards his accounts, Stone focuses on a facsimile sent by Yellow Book sales representative, Theresa Angleton (Angleton), to Stone on November 16, 2007. In her facsimile, Angleton suggested to "reconcile the check #'s with the payment amounts. Maybe there is a payment missing?" (Respondent's Exh. B). In this facsimile, Angleton did not admit—as asserted by Stone—that Yellow Book had not credited certain payments. Furthermore, Angleton's facsimile was sent eleven months before Central Indiana made any of the perceived uncredited payments.

6

Mindful of Stone's admission at trial that all payments he had perceived as omitted from Yellow Book's account statement had in fact been credited towards his unpaid balances, we conclude that Stone owes the remaining balance under Contracts 1 and 2. Therefore, the trial court improperly concluded that Stone was not indebted to Yellow Book under Contracts 1 and 2.

### III. *Contract 3*

Focusing on Contract 3, Yellow Book contends that the trial court erroneously concluded that the Contract was properly cancelled. Although Central Indiana alleged fraud in the inducement of the Contract, the trial court merely referenced a "miscommunication" as the basis for its conclusion that Contract 3 was cancelled and that Central Indiana did not owe Yellow Book any payments under this Contract. (Appellant's App. p. 25). In its findings, the trial court noted as follows:

> 3. On February 20, 2009, Stone executed a contract with Yellow Book on behalf of [Central Indiana], whereby [Central Indiana] agreed to pay Yellow Book $2,542.00 per month for twelve months ($30,504.00 total) in exchange for advertising in Yellow Book's 2010 Indianapolis directory. Contract 3 contains language providing that, by executing it, Stone personally guaranteed any indebtedness that [Central Indiana] incurred with Yellow Book. . . . At trial, the sole defense of [Central Indiana] and Stone for liability for amounts under Contract 3 was that Contract 3, according to Stone, was only to be a placeholder in the Indianapolis directory, and that a subsequent contract, reflecting a prize of only $500 per month (as opposed to $2,542.00 per month) was to be provided by Yellow Book to Stone and [Central Indiana], which would supersede the version of Contract 3 that was actually executed.
>
> . . .
>
> 13. [Central Indiana] made between eight and fifteen phone calls to various representatives of [Yellow Book] located in various offices commencing

7

the day after the signing of the third contract when no one brought him the corrected contract for the agreed reduced amount.

14. Finally after receiving no response to his numerous phone calls [Central Indiana] sent a fax to various representatives of [Yellow Book] expressing his concern and demanding the signed contract be corrected or cancelled *as per the representations previously made* and again expressing the contract was executed only to reserve his advertising position in the directory a[t] the request and direction of [Yellow Book's] representative. Said fax was sent four days after the contract in question was signed. Said fax was also a timely cancellation notice as again [Central Indiana] relied upon the representations of [Yellow Book's] employees in the manner in which said notices could be provided.

(Appellant's App. pp. 22-23, 25) (internal references omitted) (emphasis added).

To establish fraud, Central Indiana would have to prove that Yellow Book made (1) a material representation of a past or existing fact (2) that was untrue and known to be untrue, or else recklessly made, and (3) that Central Indiana did in fact rely on the representation, (4) which proximately caused it to suffer injury. *Circle Ctr. Dev. Co. v. Y/P Ind., L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002), *trans. denied.* Although the trial court did not make an explicit conclusion of fraud, but merely alluded to a 'miscommunication,' the trial court's findings clarify that this phrasing should be interpreted and read as a misrepresentation.

Yellow Book now contends that even if the trial court's conclusion should be characterized as a fraud in the inducement, evidence of the oral misrepresentations is not admissible due to the inclusion of an integration clause in Contract 3. Specifically, paragraph 14F of Contract 3 provides:

This agreement supersedes any other verbal or written agreement between Customer and Publisher. This agreement may not be changed except by a writing signed by an authorized signatory of Customer and Publisher.

(Plaintiff's Exh. 5).

"An integration clause of a contract is to be considered as any other contract provision to determine the intention of the parties and to determine if that which they intended is fully expressed in the four corners of the writing." *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1377-78 (Ind. Ct. App. 1994). "Generally, where parties have reduced an agreement to writing and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Id.* "An exception to the parol evidence rule applies, however, in the case of fraud in the inducement, where a party was 'induced' through fraudulent representations to enter a contract." *Circle Ctr. Dev. Co.*, 762 N.E.2d at 179. A party can overcome the effect of an integration clause if it can show if it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing the release and/or interpretation clause. *Wind Wire, LLC v. Finney*, 977 N.E.2d 401, 405 (Ind. Ct. App. 2012). *Prall* indicated that "[w]hether one has the right to rely depends largely on the facts of the case." *Prall*, 627 N.E.2d at 1379.

The evidence reflected, and the trial court found, that Stone entered into Contract 3 during a meeting with Yellow Book's representative, Tina Dunn (Dunn). Stone testified that, even though he had requested "a much smaller contract," Dunn brought the wrong contract and told him to "get this one signed and get it over with to hold [my] placement [in the Yellow Book]." (Transcript p. 63). She told Stone that she "would get

9

[him] the smaller contract" for five hundred dollars. (Tr. p. 64). Because Stone "felt pressured" and "liked the placement," he signed the contract. (Tr. pp. 63, 64). When he did not receive the smaller contract the following day, Stone "tried to call [Dunn] several times and continued to call the next couple of days." (Tr. p. 64). As he was not successful, Stone contacted Dunn's supervisor, Brian Blake (Blake). Finally, Stone sent a facsimile to Dunn and Blake, cancelling the contract. The evidence further indicates that, at the time Stone executed the contract, Dunn knew that Yellow Book did not "have lesser payments on signed contracts." (Tr. p. 42). Dunn also testified that she never mentioned that the executed contract could not serve as a place holder until a smaller contract could be sent to Stone.

Mindful of the trial court's credibility determination, we conclude that Stone had a right to rely on Dunn's representations. Dunn, a Yellow Book representative, assured him a less costly contract was available and the current, signed contract would only serve as a placeholder until the cheaper agreement could be executed. Dunn clearly made the representation with the intent that Stone would sign the current contract. Stone took Dunn's statements at face value and did not independently investigate them. *See contra Prall*, 627 N.E.2d at 1378-79 (Prall testified he had independently investigated Indiana National Bank's representations). Absent these representations, Stone would not have entered into Contract 3 and consequently caused the execution of the integration clause. Therefore, because fraud in the inducement caused Stone to enter Contract 3, Contract 3 is rescinded.

IV. *Pre-Judgment Interest and Attorney's Fees*

10

Finally, Yellow Book contends the trial court erred when it denied an award of pre-judgment interest and attorney's fees. Contract 1 and Contract 2[1] provide that

> If Publisher does not receive the full amount invoiced by the due date on the bill, Publisher may assess a late charge not to exceed 1.5% per month of the overdue amount.
>
> * * *
>
> In the event Publisher refers Customer's account to a collection agency or attorney due to a non-payment, Customer will be liable for all of Publisher's reasonable costs and expenses incurred in connection with Customer's non-payment, including without limitation, court costs and reasonable attorney's fees up to 25% of the unpaid account balance (plus interest accrued thereon).

(Plaintiff's Exh. 3).

### A. *Pre-Judgment Interest*

An award of pre-judgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. *Noble Roman's Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002). "The test for determining whether an award of pre-judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time." *Id.* Importantly for purposes of our review, "an award of pre-judgment interest is generally not considered a matter of discretion." *Id.*

Here, prejudgment interest on the amounts owed under Contracts 1 and 2 are easily calculated and arose at a particular time. Therefore, because we reversed the trial

---

[1] Because we concluded that Contract 3 was rescinded as it was induced by fraud, Yellow Book is not entitled to pre-judgment interest and attorney's fees on Contract 3.

11

court with respect to Contracts 1 and 2, we now remand for a calculation of pre-judgment interest on the amounts owed.

## B. *Attorney's fees*

During the hearing, counsel for Yellow Book noted that his law firm had "expended 70.00 hours to date" and requested fees in the amount of "$ 17,375.00." (Plaintiff's Exh. 14). He testified that this amount reflected the work incurred on the three Contracts and he had not made a calculation with respect to each individual Contract.

Because we hold that Yellow Book is only entitled to attorney's fees with respect to Contracts 1 and 2, we direct the trial court on remand to consider what would constitute a reasonable attorney's fees award for the two Contracts. "An excessive attorney fee award can be avoided when fees are apportioned according to the significance of the issues upon which a party prevails, balanced against those on which the party does not avail." *Stepp v. Duffy*, 686 N.E.2d 148, 153 (Ind. Ct. App. 1997), *trans. denied*. Additionally, pursuant to the terms of Contract 1, Stone is personally liable for the indebtedness incurred by Central Indiana under this Contract. (See Clause 15G—"By his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally with the Customer, the full performance of this agreement, including payment of amounts due hereunder.").[2] Therefore, we remand

---

[2] We do not reach a similar conclusion with respect to Contract 2 as Contract 2 was signed by Stone's employee who is not a party or involved in this cause.

to the trial court for a calculation of the pre-judgment interest and reasonable attorney's fees pursuant to Contracts 1 and 2.

CONCLUSION

Based on the foregoing, we conclude that (1) the trial court erred when it concluded that Yellow Book failed to credit certain Central Indiana payments under Contracts 1 and 2; (2) Contract 3 was induced by fraud and is rescinded; and (3) Yellow Book is entitled to pre-judgment interest and reasonable attorney's fees for amounts owed under Contracts 1 and 2.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, J. and BRADFORD, J. concur