## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 18 2017, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Steven Bom
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| County Motors, LLC, and Thomas Kouttoulas, <br> *Appellants-Defendants,* <br><br> v. <br><br> Clarence Russell, Jr.,[1] and Angela Sullivan, <br> *Appellees-Plaintiffs.* | January 18, 2017 <br><br> Court of Appeals Case No. 46A03-1604-SC-898 <br><br> Appeal from the LaPorte Superior Court <br><br> The Honorable Jeffrey L. Thorne, Judge <br><br> Trial Court Cause No. 46D03-1510-SC-2144 |

**Kirsch, Judge.**

---

[1] We note that the record before us indicates that Clarence Russell, Jr. passed away during the pendency of this appeal. We include him on the caption because, under the Indiana Rules of Appellate Procedure, a party of record in the trial court is a party on appeal. Ind. Appellate Rule 17(A).

[1] Thomas Kouttoulas ("Kouttoulas") and County Motors LLC ("the dealership") (together, "Sellers") appeal the small claims court's judgment, which found in favor of Clarence Russell, Jr. ("Russell") and Angela Sullivan ("Sullivan") (together, "Buyers") on their claim against Sellers stemming from Russell's purchase of a vehicle from the dealership.[2] Sellers raise four issues that we consolidate and restate as:

> I. Whether the trial court erred when it determined that the Sellers' conduct created an express warranty such that, pursuant to Indiana Code section 26-1-2-316(1), any written disclaimer or limitation of warranties was inoperative; and

> II. Whether the trial court's determination of damages was supported by the evidence.

[2] We affirm.

## Facts and Procedural History

[3] The facts most favorable to the judgment are that, in August 2016, Russell went to the dealership and spoke with Kouttoulas, the salesperson at the dealership.[3] Russell told Kouttoulas that he was looking for a truck to purchase because he was moving to Florida and needed a vehicle that he could drive there. Russell also told Kouttoulas that he needed a vehicle that could haul a trailer. *Tr.* at 13,

---

[2] Appellants' brief indicates that County Motors LLC and Kouttoulas are, together, appealing the small claims court's decision, although, as we later discuss, Kouttoulas has no liability under the small claims court's judgment.

[3] The record before us indicates that Thomas Kouttoulas's sister is the owner of the dealership. *Tr.* at 30, 36.

32, 41. Kouttoulas then directed Russell to a 1999 Chevrolet pick-up truck ("the Truck"), which was in the dealership's garage and was the only pick-up truck that the dealership had in its inventory at that time. According to Russell, Kouttoulas advised Russell that the Truck's brake line was broken and that Sellers would make that repair. With Kouttoulas's permission, Russell took the vehicle for a test drive that day,[4] but Russell did not buy the Truck at that time.

[4] About two weeks later, after being told that the brake line on the Truck had been repaired, Russell returned to the dealership on August 26, 2015, and purchased the Truck. He signed a one-page "Bill of Sale; Sale Contract; Security Agreement; and Disclosure Statement" ("Bill of Sale") and a one-page Buyers Guide ("Buyers Guide"), both of which contained language that the vehicle was being sold "AS IS" and that the buyer would bear any costs of repairs that the vehicle might need. *Defendants' Exs.* A, B. The purchase price of the Truck was $2,900. *Defendants' Ex.* A. Russell traded in a 2000 Dodge Grand Caravan ("the Caravan"), for which Sellers gave Russell a $1,000 credit toward the purchase price of the Truck, and Russell also made a down payment of $500; the balance due at the time of the sale, with taxes and fees, was $1,548. *Id*.

[5] After purchasing the Truck, Russell immediately took it for an oil change at another local car dealership ("Sauer Buick"). Sauer Buick advised Russell that

---

[4] Sellers argue, and Kouttoulas testified, that Russell had the Truck inspected by a relative on the day he took it for a test drive, but Russell did not testify to having it inspected that day.

the timing chain on the Truck needed to be replaced. *Tr.* at 14. Russell spoke to Kouttoulas about the timing chain issue, and Kouttoulas told Russell "to find a mechanic to do it" and that he would "take it off [Russell's] payments at the end[.]" *Id*. at 15, 18.

[6] Shortly thereafter, Russell noticed that the Truck was "running a little rough," so Buyers contacted a man named Chad Hathaway ("Hathaway"), who had fifteen years of experience as a mechanic,[5] and asked Hathaway to inspect the Truck. *Id*. at 16. About four days after Russell had purchased the Truck, Hathaway inspected and serviced it, discovering a number of mechanical issues with the Truck that made it unsafe to drive. Thereafter, Russell and Sullivan returned to the dealership and attempted to speak to Kouttoulas about the situation, but Kouttoulas was unwilling to discuss the matter.

[7] Thereafter, Buyers filed a complaint in small claims court concerning the Truck, and Sellers filed a counter-claim for breach of contract and a claim for breach of implied warranty on the traded-in Caravan.[6] In January 2016, the small claims court held a bench trial, at which it received testimony and evidence from the parties.

_____

[5] At the time of trial, Hathaway was not employed as a mechanic and worked in another industry, but had been doing mechanic work "on the side" for about fifteen years. *Tr.* at 12.

[6] We do not have a copy of the complaint or Sellers' counterclaim and, thus, do not know the dates of filing or the exact allegations.

[8] At trial, Russell explained that he went to the dealership specifically looking for a vehicle that he could drive to Florida and tow his belongings, and he testified that he told Kouttoulas that that was his intended purpose for buying a vehicle. Russell's testimony included the following exchange:

> Q: Did Mr. Kouttoulas make statements to you regarding the [T]ruck being in good working order that it would make it safely to Florida pulling a trailer?
>
> A: Yes.
>
> Q: And you expressed that that was your need?
>
> A: Yep. I sure did.

*Tr.* at 41; *see also id.* at 14 (stating that he explained his intended purpose to Kouttoulas). Knowing Russell's needs, Kouttoulas showed Russell the Truck, which was in the garage. Kouttoulas told Russell that the dealership "was replacing a brake line 'cause it was broke." *Id.* at 14. Russell testified, "[Kouttoulas] said he'd let me know when he got it fixed." *Id.* at 18. A couple of weeks later, after being told by the dealership that the brakes had been fixed, Russell returned, with cash, to purchase the Truck. Russell signed the Bill of Sale and the Buyers Guide and purchased the Truck, both of which stated that the vehicle was being sold "AS IS." *Defendants' Exs.* A, B.

[9] Upon cross-examination, Russell acknowledged that the Truck ran "pretty good" when he first purchased it and "that's why I thought it would be good to

go to Florida like [Kouttoulas] said." *Id*. at 17. However, after taking the Truck first to Sauer Buick and then to Hathaway, Russell learned of the Truck's mechanical problems, including issues with the suspension and brake line, that made it unsafe to drive. Russell testified that when he returned with Sullivan to the dealership to speak with Kouttoulas about it, Kouttoulas got confrontational, was "in [Sullivan's] space," and "didn't want to hear nothing we had to say." *Id.* at 16.

[10] Hathaway, who inspected and serviced the Truck, also testified. Hathaway agreed with Sauer Buick's recommendation that the timing chain needed "swap or service." *Id*. at 6. Hathaway also found other problems, including needed repairs to the ignition system, and he found "safety issues" with the brake line and the suspension. *Id*. at 7. As far as the Truck's brake lines, Hathaway testified that he did not observe that any repairs had been done. He stated that "one hard stop" could have "easily broken" the brake line, meaning the driver would lose the ability to brake. *Id*. at 10. He said that it was "clearly unsafe," and "If someone came into a repair shop – even an oil change shop—they would not let you leave with that vehicle." *Id*. at 6, 10. Hathaway also discovered that one of the cylinders "had lost compression," and the only way to fix that was to replace or rebuild the engine. *Id*. at 7.

[11] Kouttoulas testified that he reviewed and read the Bill of Sale and the Buyers Guide to Russell. Kouttoulas acknowledged that Russell had told him that he "wanted to use [the Truck] to pull a trailer," *id*. at 32, but Kouttoulas denied that he assured Russell that the Truck was suitable for him to drive to Florida

while hauling a trailer, and he denied that he told Russell that the brake line repairs had been done. With regard to the trade-in of Russell's 2000 Dodge Caravan, Kouttoulas testified that the dealership took Russell's Caravan on August 26, giving Russell a $1,000 credit on the purchase of the Truck, and that the Caravan was placed on a County Motor's sales lot, where it remained until it was sold in November, but that the purchaser returned it the same day due to mechanical issues. Kouttoulas said that the dealership did not inspect or repair the Caravan before they sold it. Kouttoulas testified that Sellers were seeking damages on their breach of contract claim in the amount still owed on the contract, which was $1,348, plus $1,000 in attorney fees.

[12] The evidence at trial pertaining to payments on the Truck was that, in addition to the $1,000 trade-in and $500 down payment, Russell made a $200 payment to the dealership, but made no more payments on the Truck. When they were not able to resolve the issues with Kouttoulas, Buyers put the Truck in storage, where it remained as of the time of trial.

[13] After taking the matter under advisement, the trial court entered Findings of Fact and Conclusions of Law ("Order"), which included the following:

> 8. [Russell] made it clear to Kouttoulas that the use for which he intended the vehicle he was to purchase was to tow a trailer full of household goods in order relocate his residence to the state of Florida.
>
> 9. Kouttoulas represented that the [Truck] would be an adequate vehicle for that intended use and expressly warranted its fitness for this particular use.

10.    The express warranty that the [Truck] was fit for the purpose intended by [Russell] was an inducement for [Russell] to purchase the [Truck].

11.    Kouttoulas represented that the brake lines on the [Truck] would be repaired by County Motors prior to delivery which was a further inducement for [Russell] to purchase the [Truck].

. . . .

13.    Neither Kouttoulas nor County Motors repaired the brake lines as promised which made the vehicle unsafe to drive.

14.    As of the date of sale, the [Truck] had serious problems with the timing chain, the ignition system, the suspension and had an oil leak.

15.    The condition of the [Truck] upon the date of sale[] made it unsafe to operate.

. . . .

18.    [Russell] made one of the $200.00 payments required under the [Bill of Sale] and failed to make any more payments thereafter and has retained possession of the [Truck].

. . . .

27.    Kouttoulas expressly warranted that the [Truck] was fit for the purpose intended by [Russell], in addition, that the brake lines would be fixed both of which were promises that were part of the basis of the bargain between the parties and an inducement for [Russell] to purchase the [Truck].

28.     The [Truck] was not fit for the purpose intended and was, otherwise, unsafe to drive.

29.     The promise of repair of the brake lines was not kept. County Motors breached the express warranty made by its employee, Kouttoulas[,] to [Russell].

30.     County Motors claims that the disclaimers and the "AS IS" language in the [Bill of Sale] estop[s] [Russell] from claiming a breach of the express warranty.

31.     Where the Seller's conduct creates an express warranty while the written [Bill of Sale] disclaims any express warranty, IC 26-1-2-316(1) controls:

> "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of IC 26-1-2-202 on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable."

Since the express warranties made by Kouttoulas on behalf of County Motors cannot be interpreted in a manner consistent with the written disclaimer of express warranties, the disclaimer becomes inoperative as a matter of law.

*Appellant's Br.* at 16-18 (internal citations omitted, emphasis in original).  The trial court determined that Russell was entitled to rescission of the Bill of Sale, "however, County Motors no longer owns the Dodge Grand Caravan which was used for trade.  Therefore, [Russell]'s only remedy is in money damages."

*Id.* at 18.  The trial court then entered judgment in favor of Russell and against County Motors[7] in the amount of $3,199[8] plus $122 for costs of the action, for a total of $3,321, and it ordered County Motors to also pay post-judgment interest.  It ordered Russell to return the Truck to County Motors when County Motors had fully paid the judgment and interest owed.  Sellers now appeal.

## Discussion and Decision

[14]   Sellers appeal the small claims court's judgment in favor of Russell.  Our standard of review is particularly deferential in small claims actions, where "the trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." *Truck City of Gary, Inc. v. Schneider Nat'l Leasing*, 814 N.E.2d 273, 277 (Ind. Ct. App. 2004) (citing Ind. Small Claims Rule 8(A)).  Nevertheless, judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." *Herren v. Dishman*, 1 N.E.3d 697, 702 (Ind. Ct. App. 2013) (citing Ind. Small Claims Rule 11(A)).  Indiana has specific rules for small claims cases, but the Indiana Rules of Trial Procedure will generally apply "unless the particular rule in question is inconsistent with something in the small claims rules." *Id.* (citing *Bowman v. Kitchel,* 644 N.E.2d 878, 879 (Ind. 1995)).  Where the two conflict, the Small Claims Rules apply. *Kalwitz v. Kalwitz,* 934 N.E.2d

---

[7] Under the judgment, County Motors was liable only to Russell, and Kouttoulas had no personal liability to Russell or Sullivan. *Appellant's Br.* at 18.

[8] The $3,199 consists of the following:  $1,000 representing the trade-in value of the Caravan; $500 down payment; $200 payment pursuant to the Bill of Sale; and $1,499 in repairs and travel expenses.

741, 749 (Ind. Ct. App. 2010). Here, the small claims court entered findings and conclusions. Although Indiana Trial Rule 52(A), which governs the effect of findings by the trial court, does not apply in small claims proceedings, the small claims court's findings, while not binding, are nevertheless helpful to this court in reviewing the judgment. *Id.* at 748 (citing *Bowman,* 644 N.E.2d at 878).

[15] As a preliminary matter, we observe that Buyers did not file an appellees' brief. When an appellee does not submit a brief, an appellant may prevail by establishing a prima facie case of error, i.e., error at first sight, on first appearance, or on the face of it. *Elrod v. Brooks*, 910 N.E.2d 231, 233 (Ind. Ct. App. 2009). By using a prima facie error standard, this court is relieved of the burden of developing arguments for the appellee. *Id.*

[16] We also observe that Sellers have not filed an appellate appendix. Indiana Appellate Rule 49(A) states that "[t]he appellant *shall* file its Appendix on or before the date on which the appellant's brief is filed." (Emphasis added.) Indiana Appellate Rule 50(A)(1) reads, "The purpose of an Appendix in civil appeals . . . is to present the Court with copies of only those parts of the Record on Appeal that are necessary for the Court to decide the issues presented." In addition to the chronological case summary, appealed order, pleadings, and various other documents, Appellate Rule 50(A)(2) requires that the appendix include "other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" Failure to file an appendix could result in dismissal. *See Yoquelet v. Marshall Cnty.,* 811 N.E.2d 826, 830 n.5 (Ind. Ct. App. 2004) (summary judgment decision was not

reviewable where appellants did not file appendix). Here, although the record before us does not include Buyers' complaint, Sellers' counterclaim, or the chronological case summary, the record does contain the Bill of Sale and Buyers Guide, which were admitted as exhibits at trial, and the small claims court's Order. Sellers also submitted the transcript of the small claims court hearing. Therefore, we will proceed to address the merits of Sellers' appeal.

# I. Indiana Code § 26-1-2-316

[17] In its Order, the small claims court found that Kouttoulas assured Russell that the Truck was fit for Russell's intended purpose and that the brake lines on the Truck would be fixed, both of which induced Russell to purchase the Truck. The small claims court determined that Kouttoulas's assurances constituted an express warranty, which was not consistent with the limiting language of the Bill of Sale and Buyers Guide, and pursuant to Indiana Code section 26-1-2-316(1) ("Section 316"), the written disclaimers of express warranties found in the Bill of Sale and Buyers Guide were inoperable. Section 316 provides:

> Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . negation or limitation is inoperative to the extent that such construction is unreasonable.

Ind. Code § 26-1-2-316(1).

[18] On appeal, Sellers do not assert that the trial court erred when it applied Section 316 or otherwise assert that Section 316 has no application. Rather, they

present other challenges to the small claims court's judgment. First, Sellers assert that the small claims court erred when, in finding that the written disclaimers were inoperative, it admitted, over Sellers' objection, Russell's testimony concerning Kouttoulas's representations to Russell about the Truck. Second, Sellers challenge the evidentiary support for certain findings and conclusions.

### A. Admission of Evidence

A small claims court has broad discretion in determining whether to admit or exclude evidence. *Herren,* 1 N.E.3d at 703-04. We will only reverse an admissibility decision for a "manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Id*. at 704; *Elrod,* 910 N.E.2d at 233. Here, Sellers argue that it was abuse of discretion for the trial court to admit Russell's testimony about what Kouttoulas said to him regarding the Truck because it was parol evidence. We, however, find no error.

The parol evidence rule is not a procedural rule that excludes evidence; it is a rule of preference: "[t]he written word is preferred as evidence because it is not subject to the vicissitudes of human memory." *Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986). It provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 688 (Ind. 2005); *Truck City of Gary, Inc.*, 814 N.E.2d at 278. Thus, the first step when

applying the parol evidence rule is determining whether the parties' written contract represents a complete or partial integration of their agreement. *Hinkel v. Sataria Distrib. & Packaging, Inc.,* 920 N.E.2d 766, 769 (Ind. Ct. App. 2010). An integration clause of contract is to be considered as any other contract provision to determine the intention of the parties and to determine if that which they intended is fully expressed in the four corners of the writing. *Yellow Book Inc. v. Cent. Ind. Cooling & Heating, Inc.,* 10 N.E.3d 22, 27-28 (Ind. Ct. App. 2014), *trans. denied.* The inquiry of whether a writing has been adopted as an integrated agreement is a question of fact to be determined in accordance with all the relevant evidence and "requires the court to hear all relevant evidence, parol or written." *Hinkel*, 920 N.E.2d at 769. Moreover, the weight given to an integration clause, if one exists, is to be decided on a case-by-case basis. *Wind Wire, LLC v. Finney*, 977 N.E.2d 401, 405 (Ind. Ct. App. 2012).

[21] Here, the Buyers Guide contains no language that could be viewed as an integration clause, and as for the Bill of Sale, it contains only the statement that "There are no statements, representations, guaranties or warranties, express or implied, made by Seller unless herein set out." *Defendants' Exs.* A and B. Assuming without deciding that such language could be viewed as constituting an integration clause, this court has recognized that an exception to the parol evidence rule applies in the case of fraud in the inducement, where a party was 'induced' through fraudulent representations to enter a contract. *Yellow Book Inc.,* 10 N.E.3d at 27-28. That is, a party can overcome the effect of an integration clause if he can show that he had a right to rely on the alleged

misrepresentations and did in fact rely on them. *Id*. at 28. Whether one has the right to rely depends largely on the facts of the case. *Id*. In this case, the small claims court made a credibility determination as to what Russell said to Kouttoulas about his intended purpose and what Kouttoulas told him about the Truck, including what needed to be and would be repaired prior to sale. The trial court determined that Kouttoulas's representations induced Russell into purchasing the Truck. We find that the record supports this determination, and it was not error to admit and consider Russell's testimony.

[22] Furthermore, Indiana Small Claims Rule 8(A) provides that small claims trials "*shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence* except provisions relating to privileged communications and offers of compromise." *Kalwitz*, 934 N.E.2d at 751 (emphasis added). Likewise, Indiana Evidence Rule 101(c)(2) provides that the Evidence Rules, other than those with respect to privileges, do not apply to small claims proceedings. *Id*. It is well-settled that small claims trials shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. Ind. Small Claims Rule 8(A). The principle that small claims trials are not bound by general evidentiary rules was applied and is illustrated by, among others, our Supreme Court's decision in *Matusky v. Sheffield Square Apartments*, 654 N.E.2d 740, 742 (Ind. 1995), where the Court determined that small claims court judgments may be supported solely by hearsay. *See also Stout v. Kokomo Manor Apartments*, 677 N.E.2d 1060, 1067 (Ind. Ct. App. 1997) (affirming small claims court's admission of exhibits that contained hearsay,

confidential information, and settlement offers).  Although parol evidence, like hearsay, is in some circumstances subject to limitation or exclusion, we find that in the context of this small claims bench trial, it was not error for the small claims court to admit and consider Russell's testimony concerning his statements to Kouttoulas and Kouttoulas's assurances to him.

### B. Support for Findings and Conclusions

[23] Sellers also challenge the small claims court's Order by asserting that certain findings were unsupported by the evidence and the judgment was contrary to law.  The clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility.  *Kalwitz*, 934 N.E.2d at 748; *see also Herren*, 1 N.E.3d at 702 (findings or judgments rendered in small claims bench trial must be upheld unless clearly erroneous).  In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.  *Kalwitz*, 934 N.E.2d at 748.

[24] On appeal, Sellers challenge Findings and Conclusions Numbers 8, 9, 10, 11, 13, 27, 28, and 29 as being unsupported by the evidence.  *Appellants' Br*. at 9-12. Numbers 8, 9, 11, and 27 reflect the small claims court's findings concerning (1) statements that Russell made to Kouttoulas regarding his reasons for purchasing a vehicle and (2) Kouttoulas's assurances to Russell regarding the Truck's fitness for that use and the repair of the brake lines.  These determinations reflect that the small claims court credited Russell's testimony

over Kouttoulas's testimony. We will not reweigh the evidence or judge the credibility of witnesses on appeal. *Kalwitz*, 934 N.E.2d at 748. The remaining challenged findings and conclusions, Numbers 10, 13, 28, and 29, consist of the small claims court's determinations that Kouttoulas's statements induced Russell to purchase the Truck, the dealership did not make the promised repairs to the brake line, the Truck was not fit for its intended purpose, and it was unsafe to drive. Considering only the evidence that supports the judgment, including that of Russell and Hathaway, and the reasonable inferences to be drawn therefrom, as we must do, we find that the small claims court's judgment in favor of Russell was not clearly erroneous

## II. Determination of Damages

[25] Sellers also challenge the trial court's determination of damages owed to Russell. The amount of damages to be awarded is a question of fact for the trier of fact. *Jasinski v. Brown*, 3 N.E.3d 976, 978-79 (Ind. Ct. App. 2013). A court is not required to calculate damages with mathematical certainty, but the calculation must be supported by evidence in the record and may not be based on mere conjecture, speculation, or guesswork. *Id.* at 979. We will sustain an award challenged as excessive if it is within the scope of the evidence presented to the trial court, and we will neither reweigh evidence nor judge witness credibility. *Id.* All uncertainties concerning the specific calculation of damages are resolved in plaintiff's favor. *Id.* "We will set aside a damage award only if it is 'so outrageous as to impress [this] court as being motivated by passion,

prejudice, and impartiality.'" *Id*. (quoting *Quebe v. Davis,* 586 N.E.2d 914, 920 (Ind. Ct. App. 1992)).

[26] Here, the trial court entered judgment in favor of Russell and against County Motors in the amount of $3,199 plus $122 for costs of the action, for a total of $3,321, and it ordered County Motors to also pay post-judgment interest. On appeal Sellers argue, "Despite the fact that Russell paid defendants only $700.00, the court awarded Russell $2,499.00 more than what he had paid, purportedly for repairs and incidental expenses which included travel expenses to and from Florida to attend a trial that they requested." *Appellant's Br*. at 10. This, Sellers argue, resulted in Buyers being unjustly enriched.

[27] We find, however, that the trial court's calculation of damages was within the scope of the evidence. At the conclusion of trial, the small claims court specifically inquired about what type of relief Buyers were seeking, asking Sullivan: "[W]hat are you asking for?" *Tr*. at 45. Sullivan replied that Buyers hoped to recover: $1,000 for credit for the Caravan that Russell "could have . . . sold himself," the $500 down payment, and the $200 payment that Russell made on the Truck. *Id*. She stated that the total amount that Buyers were requesting, including travel expenses and repairs, was $3,199. *Id*. We find no error in the small claims court's judgment in that same amount, plus costs of the action and interest.

[28] In challenging the judgment amount, Sellers also assert that the small claims court's finding Number 32 was clearly erroneous. It stated:

[Russell] is entitled to rescission of the [Bill of Sale], however, County Motors no longer owns the Dodge Grand Caravan which was used for trade. Therefore, [Russell]'s only remedy is in money damages.

*Appellant's App.* at 18. Sellers argue that the determination that County Motors "no longer owns" the Caravan was contrary to the evidence, namely Kouttoulas's testimony, because Kouttoulas testified that County Motors sold the Caravan in November 2015, but the purchaser returned it to County Motors the same day. To the extent that Sellers' position is that the evidence was that County Motors *did* own the Caravan at the time of trial and that the small claims court should have rescinded the Bill of Sale contract and ordered the Caravan's return to Buyers (rather than including $1,000 in the judgment as a representation of the Caravan's value), we are not persuaded.

[29] Kouttoulas's testimony was that, in November 2015, the Caravan was sold and then returned by the purchaser to County Motors the same day; Kouttoulas did not testify that County Motors still owned it as of the date of trial in January 2016. Furthermore, according to the record before us, Buyers did not seek rescission of the contract or ask for the return of the Caravan to them; rather, Buyers asked for $3,199 in damages. Accordingly, the small claims court was not required to order that the Caravan be returned to Russell,[9] and we find any

---

[9] We note that this court has found that it was error for the trial court to have ordered rescission where no party had requested it. *New Life Cmty. Church of God v. Adomatis,* 672 N.E.2d 433 (Ind. Ct. App. 1996).

error in the determination that County Motors "no longer owns" the Caravan was harmless. *See Brown v. Guinn*, 970 N.E.2d 192, 197 (Ind. Ct. App. 2012) (holding that small claims court's statement in conclusion – that defendant was in possession of the contract – even if erroneous, was not reversible error, as judgment did not turn on whether defendant was in possession of contract). Here, the small claims court's calculation of damages was within the scope of the evidence.

[30] Finding as we do that the small claims court correctly applied Section 316, did not err in admitting evidence, and that its findings and conclusions were not clearly erroneous, we affirm the small claims court's judgment.

[31] Affirmed.

[32] May, J., and Crone, J., concur.