2025 IL App (1st) 231548-U

FIFTH DIVISION
March 28, 2025

No. 1-23-1548

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| CITIMORTGAGE, INC., and ANTOINE DRINK, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs and Counterdefendants-Appellees, | ) ) | Cook County. |
| v. | ) ) | No. 2018 CH 3507 |
| | ) | |
| MARYLAND AT FIVE LLC, | ) ) | Honorable Thaddeus L. Wilson, |
| Defendant and Counterplaintiff-Appellant, | ) ) | Judge Presiding. |
| (4005 S. Calumet, LLC, Counterplaintiff-Appellant). | ) ) | |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Navarro concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's grant of summary judgment in plaintiffs' favor is affirmed; defendants' request for reformation of a deed was properly denied where the property had been conveyed to a *bona fide* purchaser for value, and plaintiffs, possessing superior title, were entitled to quiet title, declaratory relief, and ejectment.

¶ 2   This appeal stems from a real estate transaction in which several documents, prepared by

multiple parties, contained conflicting, inaccurate, and fictional information, leaving the exact nature of the parties' interests unclear. The circuit court granted summary judgment in favor of plaintiffs CitiMortgage, Inc., and Antoine Drink, and against defendants 4005 S. Calumet, LLC (Calumet), and Maryland at Five LLC (Maryland). The circuit court found that although Mr. Drink occupied Unit 3S, he has the superior title to Unit 3N, and was thus entitled to quiet title to that unit, under a 2008 warranty deed that listed the PIN and legal description for Unit 3N. Defendants appeal from that ruling, arguing that they are entitled to reformation of the 2008 deed, which listed a fictional common address, to reflect Mr. Drink's ownership of Unit 3S as the parties allegedly intended to convey. Plaintiffs argue that reformation is not possible because the unit has since been sold to a *bona fide* purchaser and this court is unable to unwind that sale. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Factual Background

¶ 5     The relevant facts are undisputed and are taken from the documents attached by the parties to their summary judgment briefing.

¶ 6     In 2005, Calumet acquired a building at 4005-4007 South Calumet Avenue in Chicago and developed it into multiple residential condominium units. The northern units are assigned the address 4005 South Calumet Avenue, while the southern units have the address 4007 South Calumet Avenue. Accordingly, 4005 South Calumet Avenue is comprised of units 1N, 2N, and 3N, and 4007 South Calumet Avenue is comprised of units 1S, 2S, and 3S.

¶ 7     On June 30, 2008, Calumet transferred interest in one of the units to Mr. Drink through a special warranty deed (2008 deed). The first document prepared, the sale contract, contains the property index number (PIN) corresponding to Unit 2N and the common address 4005 South

2

Calumet Avenue, Unit 3S, a common address and unit combination that does not exist. The 2008 deed lists the PIN 20-03-111-033-1003, which corresponds to 4005 South Calumet Avenue, Unit 3N (Unit 3N), and includes the legal description for Unit 3N as well. However, the common address listed on the deed is 4005 South Calumet Avenue, Unit 3S, reflecting the same nonexistent address that was in the sale contract. Transfer tax declarations filed with the state, county, and city also include this incorrect address as well as the PIN for Unit 2N. After purchasing the property, Mr. Drink moved into 4007 South Calumet Avenue, Unit 3S (Unit 3S). This dispute centers around Unit 3N and Unit 3S.

¶ 8    Mr. Drink financed the purchase with a mortgage loan from CitiMortgage for $169,000. The mortgage agreement includes a common address of "4005-07 South Calumet Avenue, #3S," but the PIN and legal description in that document again correspond to Unit 3N.

¶ 9    On September 17, 2013, Calumet executed a quit claim deed transferring its purported interest in Unit 3N to Azam Khan, with the deed recorded on January 9, 2014 (2014 Deed). On November 2, 2015, Mr. Khan transferred his interest in Unit 3N to Maryland. The 2008, 2014, and 2015 deeds all reference the PIN and legal description corresponding to Unit 3N.

¶ 10    On August 5, 2014, during a Cook County Annual Tax Sale, Fair Deal of Illinois purchased the delinquent 2012 taxes for Unit 3S, which has the PIN 20-03-111-033-1006, and on September 14, 2017, the court in the tax matter issued an order directing the issuance of a tax deed for that unit.

¶ 11    Mr. Drink has, at all relevant times, lived in Unit 3S and Maryland currently has possession of Unit 3N.

¶ 12    The following table summarizes the contents of the relevant documents and the varying common address, PIN, and legal description used in each of them.

| | Sale Contract | 2008 Deed | Mortgage Agreement | Transfer Tax Declaration |
|---|---|---|---|---|
| **Common Address** | Unit 4005-3S | 4005 S. Calumet, #3S | 4005-07 South Calumet [*sic*] Avenue, #3S | 4005 S. Calumet, 3S |
| **PIN** | 2N | 3N | 3N | 2N |
| **Legal Description** | | 3N | 3N | |

¶ 13                                B. Procedural History

¶ 14    On March 16, 2018, CitiMortgage and Mr. Drink filed a three-count complaint against Maryland for quiet title, declaratory relief, and ejectment, in which they alleged that Mr. Drink held superior title to Unit 3N, subject only to the mortgage of CitiMortgage, and was entitled to possession as well as any rent that had been collected from the tenants in Unit 3N.

¶ 15    On April 26, 2019, Maryland filed a counterclaim seeking reformation of the 2008 deed to reflect that Mr. Drink actually owned Unit 3S, not Unit 3N. It argued that both parties to the 2008 transaction intended to convey Unit 3S but failed to properly do so as the result of a mutual mistake in describing the property in the 2008 deed. The counterclaim was later amended to include Calumet as an additional counterplaintiff.

¶ 16    On November 30, 2022, CitiMortgage and Mr. Drink moved for summary judgment on the counterclaim, arguing that reformation was not permissible because Unit 3S had been acquired by a *bona fide* purchaser for value, Mr. Drink had superior title to Unit 3N, and CitiMortgage held a valid security interest and was not a party to the deed that Maryland and Calumet were attempting to reform. CitiMortgage and Mr. Drink explained that the relief sought in this case was not "to make a simple correction, but rather to *fundamentally change each and every single identifier* of

the property in the 2008 Warranty Deed—the legal description, the Parcel Identification Number, and the common address." (Emphasis in original.) Because the deed contained a common address that did not exist and the description and PIN corresponding to Unit 3N, they maintained that the correct remedy was to reject the fictional common address and allow the PIN and legal description to control. According to CitiMortgage and Mr. Drink, the tax buyer did not have notice of any dispute regarding the ownership of Unit 3S and believed Mr. Drink was only a tenant. Additionally, the only reason Unit 3S was sold to a tax buyer was because Calumet abruptly stopped paying its taxes, even though it was still the record owner of the unit. In support of their argument that Mr. Drink had superior title to Unit 3N, they noted that Dennis Elahi controlled both Maryland and Calumet. CitiMortgage and Mr. Drink suggested that the conveyances between Mr. Elahi's LLCs and Mr. Khan were shams and that the decision to abruptly stop paying the property taxes on Unit 3S was highly suspect and potentially prompted by their discovery of the errors in the 2008 deed.

¶ 17 The parties filed cross-motions for summary judgment on the complaint on December 1, 2022. CitiMortgage and Mr. Drink incorporated all the facts and arguments from their motion for summary judgment on the counterclaim. They also argued that Mr. Drink was the owner of Unit 3N and entitled to an order for ejectment, possession of the unit, and any rents collected.

¶ 18 Maryland and Calumet argued in their motion that the 2008 deed was the result of a mutual mistake and thus warranted reformation. They noted that Mr. Drink never occupied Unit 3N and continued to reside in Unit 3S. Maryland and Calumet argued that CitiMortgage and Mr. Drink made a binding admission that Mr. Drink's intention was to purchase and reside in Unit 3S and that this proved that the 2008 deed was the product of mutual mistake. Additionally, they argued that the tax buyer was not a *bona fide* purchaser, both because the buyer did not purchase the property for "valuable consideration" and because notice of the sale was not proper.

5

¶ 19    In response, CitiMortgage and Mr. Drink argued that Maryland and Calumet were primarily responsible for the various errors. They also argued that any claim that Maryland had a competing interest in Unit 3N or had no notice of Mr. Drink's interest in the unit were without merit because Maryland and Calumet were both controlled by Mr. Elahi. Maryland and Calumet countered by arguing that the tax buyer was not a *bona fide* purchaser and that the buyer could easily be returned to "status quo" by having the delinquent taxes that had been paid for Unit 3S returned. Maryland and Calumet also argued that the parties "stipulated" to there being a mutual mistake because the parties' actual agreement was to sell Unit 3S to Mr. Drink and the only way to rectify that was through reformation that made clear that the deed was for Unit 3S.

¶ 20    The court issued a written decision on July 13, 2023, granting summary judgment in favor of CitiMortgage and Mr. Drink on the complaint and the counterclaim and denying Maryland and Calumet's cross-motion for summary judgment. It found that reformation was not possible for two reasons. First, the court was not permitted to void the tax sale in this case because the tax buyer was a *bona fide* purchaser and the sale was not being attacked through a direct appeal of the tax sale or a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)) attacking the order that transferred the property to that purchaser. Second, there was no meeting of the minds in the original transaction conveying the deed to Mr. Drink, because questions remained about the intentions of each party and which unit they wanted to buy or sell.

¶ 21    The court also found that Mr. Drink was entitled to quiet title to Unit 3N. It reasoned that he held superior title to the unit because despite the numerous errors in each document, a search of the grantor-grantee index would have shown Mr. Drink was the record owner of Unit 3N and Maryland and Calumet therefore had constructive notice of his ownership. For these reasons, Mr. Drink was entitled to ejectment and an order declaring him the title owner of Unit 3N. However,

the court found that Mr. Drink was not entitled to rent collected for Unit 3N because he had been living in Unit 3S without paying rent. Finally, the court found that CitiMortgage and Mr. Drink's *laches* argument, raised in response to Maryland and Calumet's motion for summary judgment on the counterclaim was moot in light of the rest of its findings.

¶ 22 In the July 13, 2023, order, the circuit court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay appeal of its ruling granting summary judgment to CitiMortgage and Mr. Drink.

¶ 23                                    II. JURISDICTION

¶ 24 The circuit court entered its Rule 304(a) finding on July 13, 2023. Maryland and Calumet filed a notice of appeal on August 14, 2023, which was timely, as the 30th day was a Saturday. We have jurisdiction pursuant to Rule 304(a) (eff. Mar. 8, 2016), governing appeals from final judgments as to one or more but fewer than all the parties.

¶ 25                                    III. ANALYSIS

¶ 26 On appeal, Maryland and Calumet argue that the circuit court erred in granting summary judgment in favor of CitiMortgage and Mr. Drink on both the complaint and the counterclaim. Specifically, they argue that, for several reasons, the court erred in not reforming the 2008 deed, and Mr. Drink should not be allowed to acquire Unit 3N. They insist that the 2008 deed was the product of a mutual mistake and that the parties stipulated that they intended to convey Unit 3S, not Unit 3N. They also argue that allowing Mr. Drink to acquire Unit 3N would be unjust and the tax buyer should have no bearing on the attempt to reform the 2008 deed to reflect Mr. Drink's ownership of Unit 3S.

¶ 27 Summary judgment is appropriate where, construed liberally and in favor of the non-moving party, "the pleadings, depositions, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Summary judgment should be denied and the issue referred to the trier of fact when reasonable individuals could draw different inferences from the undisputed material facts, or when there is a genuine dispute over a material fact. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998). When parties file cross-motions for summary judgment, they agree that there are no issues of material fact and that the case disposition turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). Our review of a circuit court's grant or denial of summary judgment is *de novo*. *Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009).

¶ 28                                    A. Reformation

¶ 29     We agree with the circuit court that the first question we should address is whether the original deed conveying property to Mr. Drink should be reformed to reflect that he was actually sold Unit 3S, despite the fact that the PIN and legal description were for Unit 3N. The circuit court gave two reasons why reformation was not possible—the presence of the tax buyer for Unit 3S and the absence of a meeting of the minds that the conveyance was for Unit 3S. We agree that this court cannot void the tax sale and that the tax buyer is entitled to the protections afforded to a *bona fide* purchaser for value. Because this finding is dispositive of this issue and this case, we need not address whether there was a meeting of the minds with respect to the 2008 deed.

¶ 30     An action for reformation seeks to change a written instrument by inserting an omitted provision or deleting an existing one so that the document conforms to the original agreement of the parties. *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008). A deed can be reformed only if there is clear and convincing evidence of a mistake. *Id.* The party seeking reformation has the burden of proving that the parties agreed on certain terms, but that an error

occurred when the deed was written and signed, either due to mutual mistake or one party's mistake combined with the other party's fraud. *Id.*

¶ 31 Reformation is an equitable remedy, subject to the typical equitable defenses. Equity will not reform a deed against a *bona fide* purchaser for value. *Pulley v. Luttrell*, 13 Ill.2d 355 (1958). Maryland and Calumet, who are seeking reformation, contend that Fair Deal Illinois is not a *bona fide* purchaser for value because of the price paid and the notices given. However, even if that were true, which it is not for the reasons we discuss below, Maryland and Calumet cannot collaterally contest, in this proceeding, the tax buyer's status as a *bona fide* purchaser for value.

¶ 32 Section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2020)) outlines the limited avenues through which a tax deed may be challenged, providing, in relevant part:

"§ 22-45. Tax deed incontestable unless order appealed or relief petitioned. Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2-1203 or 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as

set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-20 through 22-30."

¶ 33    As this court has explained:

"The legislature intended a tax deed, once it is issued, to be virtually incontestable except by direct appeal. The legislature's intent was to provide a tax buyer with a new and independent title, free and clear from all previous titles and claims of every kind, and assurance to the tax buyer that his title and rights to the property would be unimpaired."

*S.I. Securities v. Powless*, 403 Ill. App. 3d 426, 429 (2010).

¶ 34    Maryland and Calumet do not suggest that this is a direct appeal or a section 2-1401 challenge to the tax sale or that any of these possible grounds for voiding the sale apply. Instead, they argue that this limitation is an affirmative defense under the Property Tax Code and was forfeited because it was first raised in reply to a summary judgment motion. There is no merit to this argument. This "defense" was properly raised in response to Maryland and Calumet's attempt to reform Mr. Drink's property deed to the detriment of the tax buyer who was a *bona fide* purchaser for value. Also, this court cannot ignore the limitations in the Property Tax Code, which prevent us from unwinding a tax sale, except in the tax sale proceeding itself or a section 2-1401 attack on the sale and only on very limited grounds—none of which are present here.

¶ 35    Rather than being a "red herring," the presence of the tax buyer and our inability to void the tax sale through this case is dispositive. In attempting to reform the 2008 deed, Maryland and Calumet seek to undermine the rights of the tax buyer. Because no challenge was raised in the tax deed proceedings, the tax deed is final.

¶ 36    Moreover, even if we could look beyond the tax sale, Maryland and Calumet really have

no basis for attacking the tax buyer's status as a *bona fide* purchaser for value. A *bona fide* purchaser is a person who takes title to real property in good faith for value without notice of outstanding rights or interests of others. *Daniels v. Anderson*, 162 Ill. 2d 47, 57 (1994). Maryland and Calumet argue that the tax buyer is not a *bona fide* purchaser for two reasons: the buyer did not provide "valuable" consideration, and the buyer had, at the least, inquiry notice, of Mr. Drink's interest in Unit 3S. Both arguments are without merit.

¶ 37     As a general rule, courts will not inquire into the adequacy of the consideration to support a contract. *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 24. Illinois courts have only done so where the consideration is so grossly inadequate that it shocks the conscience or is tantamount to fraud. *O'Neill v. DeLaney*, 92 Ill. App. 3d 292, 297 (1980). That is not the case here. The tax buyer acquired Unit 3S for $3,594.91 and there is no allegation or evidence of fraud in their acquisition of the unit.

¶ 38     Maryland and Calumet also argue that the tax buyer was on notice of Mr. Drink's interest in Unit 3 S. However, the record does not support this contention.

¶ 39     Notice can be actual (knowledge purchaser had at the time of the conveyance) or constructive (knowledge that the law imputes to the purchaser regardless of their actual knowledge). *US Bank National Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59. There are two kinds of constructive notice: record notice and inquiry notice. *Id*. A purchaser is charged with notice of all items in the chain of title appearing in the grantor-grantee index maintained by the recorder of deeds. *In re County Collector*, 397 Ill. App. 3d 535, 549 (2009). A purchaser is placed on inquiry notice when facts revealed in the title search process would cause a reasonable person to think twice about completing the transaction. *Id*. A party on inquiry notice is charged with knowledge of everything that would be revealed by a diligent inquiry or the kind of search or

investigation which a diligent person, intent on ascertaining a fact, would usually and ordinarily make. *Application of County Treasurer*, 216 Ill. App. 3d 162, 170 (1991); *Cessna v. Hulce*, 322 Ill. 589, 595 (1926).

¶ 40  Maryland and Calumet argue that the tax buyer had inquiry notice. They rely on this court's decision in *Villasenor*, where we found that a mortgagee was not a *bona fide* purchaser when it issued a mortgage because the presence of the purported owner's tenant, her grandson, put them on inquiry notice of her interest in the property. *Villasenor*, 2012 IL App (1st) 120061, ¶ 4. In *Villasenor*, appraisers sent by the mortgagee actually had direct contact with the tenant who could have told them about his grandmother's ownership of the property but instead of inquiring further, they "just took pictures, and *** left." *Id*. ¶ 24. The court noted that if they had inquired further, they would have learned about the original owner's interest in the home which would have caused the bank to search the chain of title further and revealed a fraudulent conveyance with inadequate consideration. *Id*. ¶ 64. The court reasoned, "These facts in tandem would have led U.S. Bank to learn of [the tenant's] interest and [the lender's] misrepresentation and fraud." *Id.*

¶ 41  Here, in contrast to *Villasenor*, there is no evidence that the tax buyer ever had actual contact with Mr. Drink and, where the only inquiry was the mortgagee's investigation prior to issuing a mortgage, the process of securing a tax deed required strict compliance with statutory notice provisions. The record reflects that the tax buyer satisfied the notice requirements in the Property Tax Code under section 22-5 (35 ILCS 200/22-5 (West 2020)), the sheriff's notice required by section 22-10 (*id.* § 22-10), clerk's notice required by section 22-25 (*id.* § 22-25), and publication notice required by section 22-20 (*id.* § 22-20). Through this process, according to affidavits from the sheriff's office and the tax buyer's attorney, Mr. Reiter, the tax buyer attempted to make direct contact with Mr. Drink and all other potentially interested parties. Nothing in this

process, including a title company's search of the grantor-grantee index, put the tax buyer on notice of Mr. Drink's purported ownership interest in the unit or any issue with its title. According to Mr. Reiter, the buyer was not aware of any dispute between the parties in this case and believed Mr. Drink was a non-owner occupant of the unit. Mr. Reiter also explained that in the thousands of tax sale purchases this company had made, it was not uncommon for a non-owner tenant to occupy the premises.

¶ 42 In short, even if we could consider the issue of notice in this case—which we cannot given the finality of the tax sale—we do not think that Maryland and Calumet have shown that the tax buyer was on notice and was therefore not a *bona fide* purchaser of Unit 3S.

¶ 43 B. Quiet Title, Declaratory Relief, and Ejectment

¶ 44 The next question is what relief CitiMortgage and Mr. Drink are entitled to. Having found that reformation is not possible, we agree with the circuit court that CitiMortgage and Mr. Drink's claims for quiet title, declaratory relief, and ejectment must be decided in their favor.

¶ 45 An action to quiet title is an equitable proceeding used to resolve disputes regarding ownership of property by removing any claims or clouds on the title. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). A "cloud on title" refers to any apparent legal claim to property that is actually invalid or unenforceable. *Id.* To succeed in an action to quiet title, the plaintiff does not need to prove that his title is perfect but, rather, that it is superior to that of the defendant. *Id.* The plaintiff, however, must recover on the strength of his own title rather than on defects in the defendant's title. *Diaz v. Home Federal Savings & Loan Ass'n*, 337 Ill. App. 3d 722, 726 (2002).

¶ 46 Here, the deed, the real estate contract, the mortgage agreement, statements by the parties, and subsequent conveyances created a cloud on the title for Unit 3N. Despite these errors, Mr.

Drink holds superior title to the property because of the 2008 deed, recorded with the Cook County Recorder of Deeds on July 10, 2008, subject only to the lien held by CitiMortgage.

¶ 47   A purchaser is charged with constructive notice of what appears in the grantor-grantee index, the legal record required to be maintained by the recorder of deeds. *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 56. The 2008 deed lists the PIN and legal description for Unit 3N and a search of the grantor-grantee index would have revealed Mr. Drink as the record owner of that unit. Maryland and Calumet were charged with notice of that recorded interest. While a buyer or seller might not be expected to uncover all the details in this series of blunders, these parties are still charged with notice of the fact that Mr. Drink was listed as the record owner of Unit 3N. As a result, Mr. Drink's title to Unit 3N is superior.

¶ 48   The incorrect common address listed on the 2008 deed does not affect this interest. Illinois courts have ruled that when a portion of a property description is false or impossible, but the other elements adequately describe the land being conveyed, the incorrect part of the deed should be disregarded, and the remaining valid elements should be upheld. See *City of Virginia v. Mitchell*, 2013 IL App (4th) 120629, ¶ 33 (citing *Meyers v. Ladd*, 26 Ill. 415, 417-18 (1961)). Because the PIN and legal description adequately describe Unit 3N, the fictitious common address may simply be disregarded.

¶ 49   Maryland and Calumet also argue extensively that recognizing Mr. Drink's interest in Unit 3N would be unjust. We disagree. Because the tax sale cannot be unwound, failing to recognize Mr. Drink's interest in Unit 3N would mean that he and CitiMortgage would be left with nothing. For four years, Mr. Drink paid the property taxes on Unit 3N and made payments toward a mortgage that he believed was secured by a real interest in the property. Only after Maryland and Calumet inexplicably stopped paying the property taxes on Unit 3S and that unit was sold to the

14

tax buyer, was this chain of mishaps uncovered. It may be that some degree of fault rests with each party for the numerous errors that occurred here. But whatever Mr. Drink's degree of fault, leaving him and his mortgagee without any property interest despite years of payments that they believed were in compliance with the terms of their sale would be truly unjust.

¶ 50    Accordingly, Mr. Drink is entitled to ejectment and a declaration that he is the owner of Unit 3N, subject only to his mortgage. But we agree with the circuit court that the equities do not support the payment of back rent for Unit 3N to Mr. Drink. Mr. Drink has lived in Unit 3S for years without paying rent and should not be entitled, on top of that benefit, to rent collected from the tenants of Unit 3N during that time.

¶ 51                                IV. CONCLUSION

¶ 52    The circuit court did not err in granting summary judgment in favor of CitiMortgage and Mr. Drink where reformation is not possible because the unit has since been sold to a *bona fide* purchaser in a tax sale and this court is unable to unwind that sale. Despite occupying Unit 3S, Mr. Drink has superior title to Unit 3N under the 2008 deed, which lists the PIN and legal description for that unit. Accordingly, Mr. Drink is entitled to a recognition of his interest in Unit 3N as well as possession of that unit.

¶ 53    For the above reasons, we affirm the circuit court's grant of summary judgment.

¶ 54    Affirmed.